WhitaeeR, Judge,
delivered the opinion of the court:
This case is before us on plaintiffs’ motion for reconsideration.
In our opinion, delivered on November 2,1960, ante, p. 208, we held that defendant had taken an easement of flight over plaintiffs’ property in April 1947, when defendant began flying jet planes over the property at low altitudes with the intention of continuing to do so at will. We reaffirm that holding. However, we have come to the conclusion that we were in error in holding that plaintiffs’ cause of action was barred because not brought within sis years from that date. In so holding we did not give effect to the principle announced in United States v. Dickinson, 331 U.S. 745.
In that case, Dickinson brought suit for the taking of his land by the flooding of it, caused by the erection of a dam on the Kanawha River in West Virginia. The United States contended that the taking had occurred when the dam began to impound water, but, in any event, no later than when the dam was fully operable and the flooding of plaintiff’s property had begun, and that suit had to be instituted within six years from that time. The Supreme Court said that it *223 was not necessary to decide whether plaintiff could have brought suit at that time, because it said he was not required to do so within six years from that date, but was entitled to wait until the extent of the taking was definitely ascertained. See especially pages 748-750.
In the case at bar, we do not think the extent of the taking of an easement of flight had been ascertained when the jets first began to fly over plaintiffs’ property. This was in April 1947. In 1947, there were an average of 43 planes per month at the Base, the next year an average of 70, the number varying somewhat from year to year until in 1957 there was an average of 108 per month. These planes passed over some part of plaintiffs’ 10.3-acre tract whenever runway 14-32 was used. This was not the main runway; it was used when the direction of the wind required or when the main runway was closed for repairs; but when it was used jet planes flew over plaintiffs’ property throughout the day and sometimes in droves. Some of these planes passed directly over plaintiffs’ dwelling house.
Plaintiffs had been uneasy about the flight of the planes over their property and suffered considerable inconvenience from the noise and vibration, but until about the first of September 1954 they had not found the conditions intolerable. However, in August 1954, the Base Commander issued an order requiring all planes using runway 14-32 to make a right turn after passing the airdrome boundary or as soon thereafter as practicable. This was for the purpose of avoiding the Morningside housing area, but the effect of it was to force the planes to fly directly over or very near plaintiffs’ dwelling. This quite materially increased the noise and vibration and the consequent inconvenience, discomfort, and uneasiness suffered by plaintiffs. Plaintiffs’ protests were unavailing, and finally, in September 1956, they vacated the premises; and since then the premises have been unoccupied.
In the Dickinson case it was said that the taking by flooding was a continuous process and was not fully consummated until all the land had been flooded which would be flooded. When that happened, the cause of action had fully accrued. So, in the case at bar, where at the outset it was not known to *224 what extent the jet planes would pass over the property and, hence, whether or not the condition would become intolerable, plaintiffs’ cause of action had not fully accrued and did not fully accrue until such conditions had come to pass or the extent of the use and the consequent interference with plaintiffs’ use and enjoyment of their property was known or ascertainable. That date was approximately September 1, 1954, or shortly thereafter, when conditions became unbearable.
That there has been a taking of an easement of flight at altitudes of 75 feet and above admits of no doubt. Plaintiffs are entitled to recover the diminution in value of their property as a result of the taking, which date we find was September 1,1954.
The Trial Commissioner found that the value of the property, as of August 1954, would have been $31,025, except for the taking of the easement, and that after September 1,1954, the value had fallen to $18,615, or a total depreciation as a result of the taking of the easement of $12,410. We think, however, that after September 1, 1954 plaintiffs’ property had little present value for residential purposes. See Highland Park, Inc., v. United States, 142 Ct. Cl. 269. However, as we held in that case, this does not mean that plaintiffs are entitled to recover as compensation the entire fair market value of their property at the time of the taking. In Highland Park, Inc., we said the property had a value equal to “the amount a speculator might pay for it, on the theory that the Government might abandon the use of Hunter Field as a jet bomber base.” The same applies here. Or, another change in the flight pattern might occur, so that the planes would no longer fly directly over plaintiffs’ property; or the zoning regulations might be changed to permit its use for purposes other than residential.
But the value after the taking of $18,615, as found by the Trial Commissioner, appears high if the property had no value for residential purposes and could not be put to other uses because of the zoning restrictions. Two years later, in 1956, the Trial Commissioner found that this value was unchanged and, yet, plaintiffs were unable to sell their property in that year at a price of $20,000. Plaintiffs did receive an *225 offer of $11,000, but this they refused because they thought this price was too low. The property must have been worth somewhere between plaintiffs’ asking price and the offer of $11,000. We find it had a value of $15,500 after the taking of the easement. Deducting this from its value before the taking, of $81,025, leaves a balance of $15,525. This amount plaintiffs are entitled to recover, plus an amount computed at 4 percent per annum on said sum from September 1,1954, to compensate for the delay in payment.
Defendant is vested with a perpetual easement of flight for its aircraft of all types at an altitude of 75 feet or greater above and over plaintiffs’ property.
Plaintiffs’ motion for reconsideration is granted, and the order of November 2, 1960, dismissing plaintiffs’ petition is set aside and withdrawn. Judgment will be entered against the defendant, and in favor of plaintiffs, for the sum of $15,525, plus an amount computed at the rate of 4 percent per annum from September 1, 1954, to date of payment. The conclusion of law entered on November 2, 1960, will be amended accordingly.
It is so ordered.
Dureee, Judge; Laramore, Judge; Madden, Judge; and JoNes, Chief Judge, concur.