Per Curiam :
In bis amended petition,[1] plaintiff, an American citizen naturalized in 1948, sets forth tbe following allegations:
a. Prior to March 28, 1931, be was a German citizen, leaving that country on that date for tbe United States on account of Nazi persecution. Before he left, be delivered *449 for safekeeping to Ms brother (Sigbert Baer), in Germany, a package containing 880,000 Reichsmarks belonging to him; the brother agreed to return the money to plaintiff. Sigbert Baer kept the package until the cessation of hostilities in Europe in May 1945. Shortly thereafter, plaintiff demanded that his brother return the money, but Sigbert (who lived in the American Zone of Germany) was prohibited from repaying the sum by Military Government Law No. 53 (and associated regulations) which forbade the transfer of German funds outside of Germany. In 1946, plaintiff lent the money to Sigbert for use in his business; Sigbert, who was at all times able to repay, formally acknowledged Ms obligation of repayment. The value of the 880,000 Reichsmarks, plaintiff asserts, was $352,000.
b. In 1948, the occupation authorities replaced the Reichs-mark with the Deutschemark as the internal German currency. Under this currency change, a United Nations creditor (like plaintiff) was allowed to receive payment from a German debtor of debts expressed in Reichsmarks at the rate of 1 Deutschemark for every 10 Reichsmarks owed; if the creditor objected to this conversion, he could not enforce Ms claim until final settlement of the German external debt problem. Plaintiff asserts that the Deutschemark has never been worth more than 25 cents, as compared to 40 cents for the Reichsmark. He refused to accept conversion at the rate of 10 to 1, but was permitted to accept 5.95% of the debt without waiving Ms claim to full payment. During the period from 1949 to 1952, he received 88,000 Deutschemarks (valued, he says, at $20,944); this money had to be spent in Germany and was not subject to exchange for dollars. It is also alleged that, although West Germany announced its intention in August 1952 to pay all the debts of its citizens to United Nations creditors, this promise could not be fulfilled because of the orders of the occupation government. Pre-war external debts of Germany have been dealt with by treaty, plaintiff avers, but not the post-war external German debt. He says that he has therefore not been permitted to collect the remainder of Ms debt.
c. Plaintiff’s claim, on these allegations, is that the UMted States has taken his property, contrary to the Fifth Amend *450 ment, without paying just or due compensation. The charge is that he has been improperly deprived of the remaining money in the hands of his brother — worth at least $331,056, he says — for foreign policy or other purposes of the United States. His total demand, apparently including interest from the date of alleged taking, amounts to more than $935,000.
The defendant has moved to. dismiss on a number of grounds. We consider only the defense that the claim is barred by the six-year statute of limitations, 28 U.S.C. § 2501.
The petition in this court was filed on January 29, 1963. Six years prior to that date was January 29, 1957. Plaintiff alleges no act or event relating to his claim which took place on or after January 29, 1957. All the circumstances and occurrences to which the amended petition refers were well before 1957. The alleged loan to plaintiff’s brother occurred in 1946 and was acknowledged in that year and in 1948. Military Government Law No. 53, which prohibited the transfer of German funds beyond German borders, became effective in 1945. The Deutschemark replaced the Keichsmark in 1948, and the regulations on conversion were promulgated at that time. Plaintiff received 5.95% of the debt, in Germany, between 1949 and 1952. In 1952-1953, the occupying powers dealt with the problem of the pre-war German external debt. No event after 1953 is set up in the petition or amended petition. If a claim arose at all, it must have accrued sometime before 1957.
Plaintiff contends, however, that under the doctrine of United States v. Dickinson, 331 U.S. 745, 749 (1947), his cause of action did not ripen until the consequences o.f the Government’s action had so manifested themselves that a final account could be struck, and that for him these consequences did not so manifest themselves until it became clear that the problem of the international settlement of the German post-war external debt was being postponed indefinitely. Cf. Oro Fino Consolidated, Mines, Inc. v. United States, 118 Ct. Cl. 18, 92 F. Supp. 1016, 1018 (1950), cert. denied, 341 U.S. 948 (1951). Plaintiff says that, if he had sued earlier, the defendant would have urged that his action *451 was premature since a possible future settlement might allow him to collect the debt in full.
We cannot accept this argument. If plaintiff’s legal rights were invaded by the events mentioned in his petition (as amended), that invasion had plainly been disclosed prior to January 1957. The conversion to Deutschemarks occurred in 1948. If there was legal injury, it became clear at that time or not long thereafter. The plaintiff asserts that, from that time, he could not obtain the bulk of his money. The alleged detriment was both known and definite long before 1957; the effects of the defendant’s actions were all revealed and assessable. The bare possibility that some future international settlement — conceivably, decades in the future— might authorize plaintiff to collect his debt in full could not postpone the accrual of so specific a claim of present deprivation. This case is wholly unlike the Dickinson and comparable cases in which the course of future events could reasonably be expected to have a direct effect on the claimant’s rights. Here the future circumstance on which the plaintiff relies was a mere indefinite possibility which was too slight to arrest the accrual of the claim (if one existed).
The claim is barred by limitations. The petition is dismissed on that ground.

 Plaintiff has moved to amend Ms original petition to allege certain additional facts. We grant this motion and treat in this opinion with the petition as amended.