Jennie Red Fox LaMEAR, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 582–82L.

United States Claims Court.

Feb. 25, 1986.

Ross W. Cannon, Helena, Mont., for plaintiff.

Patricia N. Young, Washington, D.C., with whom was Asst. Atty. Gen., Carol E. Dinkins, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### I. *Introduction*

Plaintiff, Jennie Red Fox LaMear, is a member of the Blackfeet Tribe of the

Blackfeet Indian Reservation, located in Browning, Montana. Plaintiff's cause of action is premised on an alleged breach of fiduciary duty, as trustee, occasioned by the defendant's failure to properly handle a 1950 voluntary exchange of Indian allotments between plaintiff's mother-in-law, Good Victory Red Fox Spottedeagle (Spottedeagle) and another tribe member, Rosie Yellowowl Wells (Yellowowl) in violation of the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. § 464 (1982). At the time of the 1950 exchange, defendant was authorized by said statute to only approve "voluntary exchange[s] of lands of equal value ... whenever such exchange, in [its] judgment, is expedient and beneficial for ... the proper consolidation of Indian lands...." Plaintiff alleges injury because the exchange approved by defendant for her ancestor, Spottedeagle, was an unequal exchange whereby Spottedeagle traded land containing valuable subsurface mineral rights for land belonging to Yellowowl which did not contain any mineral rights. Because of this alleged mismanagement of mineral rights and the monies paid for leases with respect thereto, plaintiff seeks an accounting, an order declaring (*i.e.*, a declaratory judgment) that the mineral rights themselves be divested from Yellowowl and revested in plaintiff, and damages *measured by* all monies paid to Yellowowl as a result of the development of the mineral rights.

Following the filing of its answer, asserting various affirmative defenses, defendant has opposed plaintiff's petition with a motion to dismiss, or in the alternative, for summary judgment. Defendant's motion argues that (1) plaintiff's claim is time-barred by the statute of limitations contained in 28 U.S.C. § 2501 (1982)[1] (six years) and 25 U.S.C. § 347 (1982) (five years); (2) plaintiff lacks standing to sue; (3) the petition fails to state a claim upon which relief can be granted pursuant to R.U.S.C.C. 12(b)(4); and (4) pursuant to R.U.S.C.C. 19(b), plaintiff has failed to join an indispensable party, Rosie Yellowowl Wells. In response, plaintiff cross-moves for summary judgment on the grounds that there are no genuine issues of material fact regarding the merits of plaintiff's claim, and that she is entitled to judgment as a matter of law.

In her complaint, plaintiff alleges that jurisdiction is premised upon 28 U.S.C. § 1491 (1982). Defendant in its answer denies such allegation but failed to address the efficacy of this court's jurisdiction in its moving papers.[2] After thoroughly examining the record and the arguments of the parties relative to the issues detailed, *supra,* the court hereby dismisses plaintiff's claim for lack of jurisdiction based on her failure to assert said cause of action within the applicable statute of limitations, 28 U.S.C. § 2501.

## II. *Background Facts*

On February 28, 1918, Spottedeagle, the deceased mother-in-law of plaintiff and a member of the Blackfeet Tribe of the Blackfeet Indian Reservation, received, as an original allottee, a trust patent identi-

---

**1.** While not specifically delineated as a R.U.S.C.C. 12(b)(1) motion to dismiss, defendant's contention that 28 U.S.C. § 2501 applies shall be treated as a R.U.S.C.C. 12(b)(1) motion inasmuch as in this court the statute of limitations is jurisdictional.

**2.** In addition to the Tucker Act, 28 U.S.C. § 1491, plaintiff cites to the General Allotment Act of 1887 (GAA), 25 U.S.C. § 331 *et seq.* (1982), the Indian Reorganization Act of 1934, *supra,* and 25 U.S.C. § 162a (1982) as the statutory provisions which may reasonably be read to fairly mandate the payment of money damages in remedy of the claims alleged. Although we dismiss plaintiff's petition for lack of juris-

diction based on the statute of limitations contained in § 2501, were that *not* a dispositive defect in plaintiff's petition, we would be inclined to find jurisdiction over plaintiff's *money damages* claim pursuant to *Mitchell II,* 463 U.S. at 206, 100 S.Ct. at 2968. As for what appears from the second paragraph of plaintiff's prayer for relief (Plaintiff's Petition, November 16, 1982) to be a request for a declaratory judgment, it is abundantly clear that said request would have to be dismissed for lack of subject matter jurisdiction. *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Beachboard v. United States,* 727 F.2d 1092 (Fed. Cir.1984).

fied as Allotment 1250–A.[3] This trust patent, issued pursuant to the Act of March 1, 1907, Pub. No. 154, 34 Stat. 1015, 1035 (1907), allotted 320 acres to Spottedeagle, the title to which was to be held in trust for 25 years by the United States for her sole use and benefit. 25 U.S.C. § 348 (1982). By virtue of the Indian Reorganization Act of 1934, § 2, Pub. No. 383, 48 Stat. 984 (1934), 25 U.S.C. § 462 (1982), this trust period was extended indefinitely. Included within Allotment 1250–A was Spottedeagle's right to the minerals as well as to the surface estate.

On June 6, 1922, Rosie Yellowowl Wells, also an original allottee, received trust patent 866738. This trust patent, identified as Allotment 3477–B, allotted 319.84 acres to Yellowowl, the title to which was to be similarly held in trust by the United States; however, it consisted of only the title and rights to the surface estate (*i.e.*, ex-mineral rights). The right to the minerals was reserved to the United States to be held in trust for the benefit of the Blackfeet Tribe of Indians pursuant to the Act of June 30, 1919, Pub. No. 3, 41 Stat. 3, 17 (1919). *See* Defendant's Motion for Summary Judgment, June 28, 1983, at Exhibit 1.[4]

With respect to the foregoing two allotments, in 1949, Spottedeagle and Yellowowl voluntarily entered into an agreement to exchange their respective allotments as lands of equal value. To effect such an exchange, pursuant to the Indian Reorganization Act, 25 U.S.C. § 464, it was required to be approved by the Secretary of the Interior. According to documents submitted by the defendant, in a letter dated March 8, 1950, the Superintendent of the Blackfeet Indian Office in Browning,

Montana, recommended that the Secretary approve the exchange of land allotments voluntarily agreed to between Spottedeagle and Yellowowl as being of equal value. Defendant's Motion for Summary Judgment, June 28, 1983, Exhibit 6. The apparent basis for the Superintendent's recommendation was the Certificates of Appraisement regarding both allotments executed on May 27, 1949, by the appraiser, Stanley Pugh, which were enclosed with the letter.[5] *Id.*, Exhibits 2 and 3. Mr. Pugh, who had been appointed by the Superintendent, inspected and appraised each allotment and certified that Allotment 1250–A (Spottedeagle's original lot) consisted of 320 acres of grazing land valued at $1,280.00 and indicated "none apparent" for oil, gas or mineral value. *Id.*, Exhibit 3. Regarding Allotment 3477–B, Mr. Pugh certified that it consisted of 300 acres of grazing land and 19.84 acres of timber land with also no apparent oil, gas or mineral value. *Id.*, Exhibit 2. The appraiser did not indicate on the Certificate of Appraisement that one allotment contained mineral "rights," and the other did not. No explanation was proffered for this omission.

Previously, on or about February 27, 1950, Spottedeagle executed a deed conveying all of Allotment 1250–A (mineral rights and surface lands) to the United States in trust for Yellowowl. Similarly, thereafter, on March 2, 1980, Yellowowl and her spouse executed a deed conveying all of Allotment 3477–B (*i.e.*, surface land only) to the United States in trust for Spottedeagle. On both deeds it was stated that "[t]his conveyance is made in accordance with the provisions of the Act of June 18, 1934 (48 Stat. 984)," better known as the

---

**3.** More particularly, Allotment 1250–A is described as East ½, Section 32, Township 31 North of Range 10 West, Montana Principal Meridian, Glacier County, Montana, Blackfeet Indian Reservation.

**4.** Allotment 3477–B was legally described as Lots 1, 2, 3, and 4, south ½ of the north ½ of Section 5 in Township 35 north of Range 13, west of the Montana Principal Meridian, Glacier County, Montana, Blackfeet Indian Reservation.

**5.** The Superintendent embellished his recommendation by stating:

We recommend favorable consideration and approval of this exchange as Mrs. Red Fox is an aged person and cannot make use of her lands and is only interested in lease rentals, but the exchange of lands will provide a ranch site for Rosie Yellow Owl Wells and her husband.

Defendant's Motion for Summary Judgment, June 28, 1983, Exhibit 6 (letter dated March 8, 1950).

Indian Reorganization Act. Whereupon, on April 5, 1950, the Billings District Office, acting for the Secretary, approved both deeds.

As consummated in 1950, the voluntary exchange therefore left Spottedeagle with the beneficial ownership of Allotment 3477–B which consisted of *only* surface land. The rights to the subsurface minerals, as stated *supra*, were previously reserved to benefit the Blackfeet Tribe. Conversely, Yellowowl received through Allotment 1250–A beneficial ownership of *all* surface land as well as all mineral rights therein. Following the exchange, Spottedeagle resided continuously on Allotment 3477–B from 1950 until her death on July 31, 1958. During that period (1950–1958), Spottedeagle made no effort to rescind the voluntary exchange for any reason. On her death in July 1958, Spottedeagle left her entire estate to her son, James Red Fox, which included her total interest in Allotment 3477–B.

On November 7, 1962, James Red Fox died testate leaving his residual estate to his heirs at law, one of whom was his wife, the plaintiff herein, Jennie LaMear. Following the probation of James Red Fox's will in 1964 by the Bureau of Indian Affairs, it was determined that plaintiff, his spouse, was entitled to 1/33rd of Allotment 3477–B in her own right. Later, in April 1964, the Bureau of Indian Affairs forwarded to the plaintiff the final papers relating to her husband's estate which contained an inventory and appraisement of Indian trust lands of James Red Fox. Included in said inventory of property were mineral rights of James Red Fox inherited in 1947 (but unrelated to the allotments in issue), as well as the interest in Allotment 3477–B which he had inherited from his mother, Spottedeagle. It was from said inventory received in 1964 that plaintiff alleges she *first* learned of the exchange of allotments which had occurred in 1950. Plaintiff's Opposition Brief, August 1, 1983, Appendix (answer to Interrogatory No. 8).

In 1976, Yellowowl, in possession of Allotment 1250–A, entered into a five-year oil and gas lease with City Service Oil Company. Bonuses and rentals in the amount of $4,240 were generated by that lease. Several years thereafter, in July 1982, Yellowowl executed an oil and gas lease with Shelter Hydro Carbons Inc., and at the date of filing that lease has produced bonuses and rentals in the aggregate amount of $108,849.90. All funds stemming from such leases inured to the benefit of and were received by Yellowowl. *Id.* (answer to Interrogatory No. 9).

### III. *Dispositive Motions—Contentions*

As outlined *supra*, defendant's dispositive motion asserts a number of affirmative grounds upon which defendant claims plaintiff's petition should be dismissed, and/or summary judgment should be awarded in its favor. The first relates to this court's general statute of limitations, *i.e.*, 28 U.S.C. § 2501 (1982). Defendant asserts that inasmuch as whatever claim, if any, accrued in 1950 when the allotments were exchanged, plaintiff's 1982 petition in this court asserts a cause of action well beyond the six-year limitations period found in 28 U.S.C. § 2501. Defendant also points to another statute of limitations, 25 U.S.C. § 347, to similarly claim plaintiff's action is time-barred. Section 347 provides that actions by heirs of Indian allottees are to be brought in federal court within the time prescribed by the state statute of limitations of the state where the allotment is located, in this case the five-year period proscribed by Montana statute Mont.Code Ann. § 70–19–401 (1985). As under § 2501, given the cause of action having accrued in 1950, plaintiff's 1982 petition also falls well outside the five-year limitations period proscribed in § 347.

In addition, defendant argues for dismissal on the ground that plaintiff lacks standing in this court to assert the claim of plaintiff's mother-in-law, Spottedeagle. Defendant avers that any cause of action regarding the exchange of allotments was personal to Spottedeagle, so that, in es-

sence, plaintiff cannot allege that any duty owed to her was breached. Defendant concludes, therefore, that without "a specific statutory grant of review," and without showing "some particularized injury," plaintiff has failed to establish the requisite "harm to herself" to possess the standing to sue. Defendant's Motion for Summary Judgment, June 28, 1983, at 15. Finally, defendant seeks dismissal pursuant to R.U.S.C.C. 19(b), on the ground that plaintiff has failed to join an indispensable party, *i.e.*, Yellowowl. Defendant supports this contention by essentially paraphrasing R.U.S.C.C. 19.

In her opposition to defendant's motion, plaintiff asserts first that the six-year limitations period contained in 28 U.S.C. § 2501 had not expired in 1982 when plaintiff's petition was filed because that statute was continuously tolled for approximately 32 years, from 1950 to 1982, for two reasons. According to plaintiff, the first reason is that the statute was tolled because the defendant concealed the cause of action from plaintiff and her ancestors, and therefore they were not aware of the necessary facts to put them on notice of the accrual of the cause of action. Plaintiff's Opposition Brief, August 1, 1983, at 8–9. As the second reason, plaintiff states that "the injury to plaintiff and the other heirs of Good Victory Red Fox [Spottedeagle] . . . was inherently unknowable at that time and was unknowable until 1982." *Id.* at 10. Plaintiff's argument of "unknowability" is that her cause of action for purposes of § 2501 did not *accrue*, therefore, until 1982.

With regard to defendant's limitations argument relative to 25 U.S.C. § 347, plaintiff counters that the requirements for applying that statute have not been met. First, plaintiff argues that § 347 does not apply as the Montana statute of limitations cited by defendant covers only actions to recover title to *land*, not *mineral rights*. Second, plaintiff argues that § 347 does not apply as the Montana statute covers only allotments made by treaty, in cases where deeds are approved by the Secretary of Interior. According to plaintiff, the two

allotments at issue were granted pursuant to the General Allotment Act, not a treaty; moreover, the deeds received by the parties were not "deeds" within the meaning of § 347, as that section applies *only* to deeds to land which passes from Indians to non-Indians. *Id.* at 15–17. Finally, plaintiff asserts that § 347 has also been construed by the courts to apply only *after* the restrictions on alienation imposed by the Indian Reorganization Act have been lifted. Inasmuch as "the restrictions on alienation on the allotments involved here have never been lifted and cannot be lifted until Congress directs that they be lifted, the state statute of limitations provided for under 25 U.S.C. § 347 has no application here." *Id.* at 18.

With regard to the standing issue, plaintiff makes two general points. First, plaintiff challenges defendant's premise that the breach of fiduciary duty arising out of the allegedly mismanaged exchange was not a breach of duty owed to plaintiff. As an heir of Spottedeagle, plaintiff claims the injury inures to her benefit because she was a potential taker under Spottedeagle's estate through the estate of James Red Fox, plaintiff's deceased husband. Second, plaintiff argues that she has also been asserting her *own* legal interest, as inherited through James Red Fox. As evidence of specific injury, plaintiff recites her belief that "[i]f defendant had properly managed the exchange of these allotments, the plaintiff and the other heirs of Good Victory Red Fox [Spottedeagle] would have been the recipients of the bonuses paid by the oil companies since 1976." *Id.* at 22.

Finally, plaintiff strenuously contests the requirement to join Yellowowl because the legal title to Allotment 1250–A is in the true indispensable party, *i.e.*, the government. Therefore, as the actual legal title holder (*i.e.*, the United States) is already joined, the need for Yellowowl disappears. Thus, as the United States is trustee and legal title holder, plaintiff claims Yellowowl, as beneficiary, is already bound by any decision rendered against her trustee. Further, plaintiff contends that it is not the

duty of Yellowowl, the beneficial owner, to defend the legal title held by the trustee, but rather it is the trustee's own duty to defend its legal title for the benefit of Yellowowl.

In addition to her opposition to defendant's motion, plaintiff has also cross-moved for summary judgment on the merits of her complaint. Plaintiff asserts that defendant had a statutorily-imposed fiduciary duty to insure that the exchange of allotments between Spottedeagle and Yellowowl was an equal exchange. Plaintiff claims defendant breached this duty by *mismanaging* the exchange of allotments relative to its gratuitous transfer of Spottedeagle's mineral rights when only the surface estate should have been conveyed. Plaintiff asserts, therefore, that she is entitled to a declaration of ownership as well as a return of the mineral rights, plus damages measured by all revenues produced by the lease of those mineral rights by Yellowowl since 1976.

Oral argument relative to these dispositive motions was held telephonically on August 8, 1985. Following thereon, the court, *sua sponte,* issued two orders directing that the parties provide supplemental memoranda concerning two issues not then fully addressed. First, on August 9, 1985, the court requested the parties to brief the following question of law:

> Assuming [*arguendo* that] Goodvictory Red Fox had a cause of action following the 1950 exchange transaction, and such cause of action was not barred by the statute of limitations at the time of her death, did ·that cause of action expire with *her* death?

> If it did not, may it pass to James Red Fox and then to Jennie LaMear by will or intestate succession?

From defendant's submission, its position appears to be that whether a federal statutory cause of action survives depends on "the principles of common law." A further delineation of whose common law, or what precise "common law" is intended, however, is not given. Following thereon, defendant argues that because plaintiff's ac-

tion is personal, and under "common law" a cause of action for "personal injuries" dies with the decedent, plaintiff's cause of action died with Spottedeagle in 1958. Nowhere, however, does defendant address its essential presumption, *i.e.,* that plaintiff's cause of action is one for "personal injuries;" with any dispositive case law. As for plaintiff, her argument is totally by analogy to cases in which the precise issue was *not* addressed, but to cases where heirs of original Indian allottees have successfully asserted claims of their predecessors in interest. By negative implication, *i.e.,* because the courts therein did *not* address the issue of whether the precise cause of action survived the death of the original allottee, plaintiff asserts these cases "hold" that such causes of action survive and are actionable by legal heirs.

The second issue raised *sua sponte* by the court regards the existence of subject matter jurisdiction in the Claims Court, pursuant to the Tucker Act (28 U.S.C. § 1491), over plaintiff's claim. The parties, by order of August 19, 1985, therefore, were directed to brief the issue whether *United States v. Mitchell,* 445 U.S. 535, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (*Mitchell I*), *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (*Mitchell II*), or any other binding authority was dispositive on the issue of subject matter jurisdiction in the Claims Court. Quite naturally, defendant's brief argues strenuously that *Mitchell I* is controlling in that any *limited* fiduciary duty created by the General Allotment Act does not encompass an obligation by which defendant can be held liable for managing an Indian patentee's "mineral rights and mineral resources." Defendant's Memorandum Re Subject Matter Jurisdiction, Sept. 28, 1985, at 3. Defendant, however, artfully avoids addressing plaintiff's similar arguments relative to the Indian Reorganization Act, or 25 U.S.C. § 162a (deposit of tribal funds in banks; bond or collateral security; and investments), both of which have been asserted by plaintiff as conferring a substantive entitlement.

The major part of plaintiff's argument relative to jurisdiction concerns its belief that under *Mitchell II, supra,* this court possesses subject matter jurisdiction to hear plaintiff's damages claim. Specifically, plaintiff asserts that this court has jurisdiction because the trusteeship imposed on the Secretary of Interior by the General Allotment Act, in conjunction with § 464 of the Indian Reorganization Act, includes an explicit fiduciary obligation to manage and approve exchanges of allotments. Accordingly, plaintiff argues that "when the statutes and regulations in issue clearly establish fiduciary obligations on the government, they [*i.e.,* statutes and regulations] can then be fairly interpreted as mandating compensation from the United States for damages sustained." Plaintiff's Memorandum on Subject Matter Jurisdiction, Sept. 26, 1985, at 9.

## IV. *Discussion*

### A. *Introduction*

■ Inasmuch as the statute of limitations contained in 28 U.S.C. § 2501 is a dispositive jurisdictional inquiry for this court, we find defendant's argument asserting the statute of limitations to be sufficiently persuasive so as to bar plaintiff's claim for damages, as well as all other claim(s) without need to pass on the merits thereof. There was only *one* cause of action emanating out of the alleged breach of fiduciary duty. That cause accruing in 1950 ordinarily would have started the run-

ning of the statute of limitations on the date of the exchange. As to plaintiff, however, the question presented is whether said statute continuously tolled—during the lifetime of Spottedeagle from the exchange date in 1950 to her death in 1958; as to James Red Fox from his inheritance date in 1958 to the date of his death in 1962; and uninterruptedly to a date *within* six years of November 16, 1982, the filing of the petition. We find that in 1964 at the very latest, as discussed *infra,* plaintiff clearly had sufficient notice to be held legally accountable for asserting any cause of action, relative to the mineral rights, within the period of limitations contained in 28 U.S.C. § 2501. Therefore, having waited to assert her perceived damages claim for a period of eighteen (18) years, *i.e.,* from 1964, until November 16, 1982, plaintiff is now statutorily barred from litigating said action in this court.

### B. *Statute of Limitations: 28 U.S.C. § 2501*

■ As outlined, *supra,* defendant's motion to dismiss strenuously urges on this court the position that plaintiff's cause of action is time-barred by the general statute of limitations contained in 28 U.S.C. § 2501.[6] Section 2501 provides, in pertinent part, that:

> [e]very claim of which the United States Claims Court has jurisdiction shall be barred unless the petition thereon is filed

---

**6.** As the statute of limitations based on § 2501 is, to this court, jurisdictional in nature and not waivable, we appropriately treat defendant's motion to dismiss as one pursuant to R.U.S.C.C. 12(b)(1) for lack of subject matter jurisdiction. *Ater v. United States,* 6 Cl.Ct. 344, 348–49 (1984); *Nager Electric Co. v. United States,* 368 F.2d 847, 857, 177 Ct.Cl. 234 (1966). Pursuant thereto, we find defendant's jurisdictional attack to be *factual* in nature, in that the parties present differing factual perspectives on the relevant issues involving accrual, concealment, and inherent unknowability. As a factual attack on jurisdiction, we do not consider plaintiff's allegations as true for purposes of the motion. *Cf. Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981). Rather, we are obliged to look beyond the pleadings and decide

for ourselves those facts, even if in dispute, which are necessary for a determination of the jurisdictional merits of defendant's motion. We are constrained to so proceed because "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Cf. Mortensen,* 549 F.2d at 891; *Williamson,* 645 F.2d at 404; *De Lancie v. Birr, Wilson Co.,* 648 F.2d 1255, 1258 (9th Cir.1981); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727 (11th Cir.1982); *Exchange Nat. Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir.1976); *Prakash v. American University, et al.,* 727 F.2d 1174, 1179 (D.C.Cir.1984); *Grafon Corp. v. Hausermann,* 602 F.2d 781 (7th Cir.1979). *See also, McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 185, 189, 56 S.Ct. 780, 783, 785, 80 L.Ed. 1135 (1936).

within six years after each claim first accrues.

■ Once a movant has made a *prima facie* allegation relative to the applicability of § 2501, unless plaintiff can go forward with the burden and aptly demonstrate (1) that all the "events which directly affect the rights asserted ... took place ... *within* six years *prior* to filing";[7] or (2) "that defendant concealed its acts" so that "plaintiff was unaware" of her cause of action; or (3) "that its injury was 'inherently unknowable' at the accrual date," said movant's showing shall be rendered conclusive so as to bar plaintiff's alleged cause of action. *Japanese War Notes Claimants Ass'n v. United States,* 373 F.2d 356, 358–59 (Ct.Cl.1967); *L.S.S. Leasing Corp. v. United States,* 695 F.2d 1359 (Fed.Cir. 1982); *Menominee Tribe of Indians v. United States,* 726 F.2d 718 (Fed.Cir.1984); *McNutt,* 298 U.S. at 178, 56 S.Ct. at 780; *Jones v. United States,* 9 Cl.Ct. 292 (1985). A *prima facie* showing of the applicability of § 2501, therefore, entails findings relative to two criteria: (1) that plaintiff's claim has "accrued" (*i.e.,* it is ripe for litigation); and (2) that the accrual took place *more* than six years prior to the date of filing in this court. *Japanese War Notes Claimants Ass'n,* 373 F.2d at 358. It is hornbook law that a claim first accrues when all those events necessary to fix the alleged liability of the United States for the cause of action asserted have occurred. *Id.; Nager Electric Co., Inc. v. United States,* 368 F.2d 847, 851–52, 177 Ct.Cl. 234 (1966). This first criterion of accrual is often referred to as the "all events test."

### 1. *The "All Events Test"*

Plaintiff's cause of action is primarily one for "money damages" sufficient to compensate her (and the heirs of Spottedeagle) for the loss of the mineral rights which were allegedly improperly transferred to Yellowowl in 1950. In essence, plaintiff seeks damages to the extent of the "value" of the mineral rights transferred in 1950, *measured by* "the money paid to Rosie Yellowowl Wells since April 5, 1950." Plaintiff's Petition, November 16, 1982, at 5. That this action initially accrued upon the allegedly wrongful transfer of said rights in 1950 is clear beyond cavil. That is so because to the extent defendant had a fiduciary duty to manage the exchange of allotments, said duty was breached, if at all, at the time the defendant "approved" the transfer in 1950. At the moment of the Secretary's approval, *i.e.,* when the deeds were officially signed and delivered, any interest Spottedeagle had in the mineral rights to Allotment 1250–A was transferred to Yellowowl. The extinguishment of Spottedeagle's mineral rights in Allotment 1250–A, by the 1950 exchange, was the alleged wrong giving rise to an action for money damages and was clearly *litigable* at that very moment.

While the passage of time since 1950 has apparently matured the value of those mineral rights (as is evidenced by Yellowowl's rather lucrative leasing ventures), it does not mean that they were not property capable of being the res of a lawsuit in 1950. Surely plaintiff cannot claim lack of accrual because Yellowowl's leases were not executed until 1976 and 1982. The mineral's market value certainly could easily have been factored into a claim for damages between 1950 and 1956, *i.e.,* the initial six-year limitations period. Absent, therefore, proof of "concealment" of critical facts regarding the exchange or "inherent unknowability" as to the injury, which might otherwise toll the running of the statute of limitations, as discussed *infra,* the single cause of action which plaintiff pursues herein *both* accrued and ran out over the period 1950–1956, *i.e.,* within the lifetime of Spottedeagle (date of death: July 31, 1958).

### 2. *Concealment*

Turning now to plaintiff's allegations of concealment, *i.e.,* that the defendant's ac-

---

7. *Baer v. United States,* 164 Ct.Cl. 447, 450, *cert. denied,* 379 U.S. 878, 85 S.Ct. 145, 13 L.Ed.2d 86 (1964). *See also United States v. Dickinson,* 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947); *Klein v. United States,* 152 Ct.Cl. 221, *cert. denied,* 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 847 (1961).

tion/inaction concealed the critical facts which would have disclosed a cause of action in 1950, the *sole* basis of this claim is an answer contained in defendant's response to plaintiff's Interrogatory No. 4:

*INTERROGATORY NO. 4:* Do your files contain any documents of any kind which would have advised Goodvictory Red Fox that the ownership of the minerals in Allotment No. 3477–B was reserved to the United States in trust for the Tribe and that she would not, in obtaining that allotment thereby, receive the ownership of the minerals to this allotment?

*ANSWER:* We find no documents of any kind that would have advised Goodvictory Red Fox that the ownership of the minerals in Allotment No. 3477–B was reserved to the United States in trust for the Tribe. We think if she was advised that she would not receive the minerals it was done orally. There is no record.

Plaintiff's Motion for Summary Judgment, August 1, 1983. The determination we must make relative to plaintiff's contention and the response in the foregoing interrogatory is whether said statement shows conclusively that defendant fraudulently concealed significant facts which, if known by Spottedeagle and all persons taking through her, would have put them on notice of their claim and prompted them to have diligently pursued the same. *Gilmore v. United States,* 228 Ct.Cl. 829, 831–32 (1981); *Coastal Petroleum Co. v. United States,* 228 Ct.Cl. 864, 866 (1981); *Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C. Cir.1977). As concealment portends an allegation of fraud and implies intentional conduct, "concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Woods v. Carpenter,* 11 Otto 135, 143, 101 U.S. 135, 143, 25 L.Ed. 807 (1879). *See also, Hohri v. United States,* 782 F.2d 227, 235 (D.C.Cir.1986) (Markey, C.J., dissenting).

Unquestionably, whether Spottedeagle was precluded from knowing at the time of the exchange in 1950 "that the ownership

of the minerals in Allotment No. 3477–B [was] reserved to the United States" is indeed the most "significant [operative] fact" for purposes of any argument to toll the statute of limitations. Had defendant fraudulently concealed this fact, and were it not equally assessable to Spottedeagle, *et al.,* in another form, we would not hesitate to hold the statute tolled during the period of concealment. Unfortunately for plaintiff, we simply cannot agree that merely because defendant improvidently admits that there were no *documents* which would have apprised Spottedeagle, *et al.,* of the reservation of minerals in Allotment 3477–B, it can reasonably be inferred that defendant fraudulently concealed the *reservation* itself. We do not reach that determination here inasmuch as plaintiff's allegation is not supported by one scintilla of evidence in the record that would in any way warrant an inference of concealment.

This conclusion is also borne out by the fact that we find that there is a document in the record which was apparently available to Spottedeagle in 1950, as a public record, and which would have put a reasonable person on notice that the mineral rights to Allotment 3477–B were then reserved to the United States. While, for reasons discussed *infra,* we do not hold Spottedeagle accountable for such knowledge, the existence of said document does directly discredit plaintiff's allegation of concealment by defendant. The document referred to is the trust patent issued to Rosie Yellowowl Wells in 1922, which was filed in this court as Exhibit 1 to defendant's motion to dismiss. This document is stamped as *"Recorded:* Patent Number 866738." On that document, it states, *inter alia,* as follows:

NOW KNOW YE, That the UNITED STATES OF AMERICA, in consideration of the premises, has allotted, and by these presents does allot, unto the said Indian the Land above described ... and there is reserved from the lands hereby allotted, a right of way thereon for ditches or canals constructed by the authority of the United States. *Also reserving, to*

*the United States,* in accordance with the provisions of the Act of June 30, 1919 (41 Stat., 17), *all minerals, including coal, oil, and gas, for the benefit of the Blackfeet Tribe of Indians until Congress shall* otherwise *direct.*

(emphasis added). As a matter of *public record,* therefore, there was in 1950 an official document which in fact contained sufficient information to put a reasonable person on notice that the mineral rights to the land received in the exchange by Spottedeagle were reserved to the United States. The existence of such a public record, containing the precise information alleged to have been concealed, conclusively belies the plaintiff's misinformed allegations. Thus, we find no evidence of concealment by defendant, and plaintiff, as it is her burden, has failed to prove any.

### 3. *Inherent Unknowability*

Plaintiff's alternative contention in support of tolling the statute of limitations is that the injury fixing the cause of action, arising out of the alleged unequal exchange of allotments, was "inherently unknowable" continuously from 1950 until 1982 (when plaintiff was apprised of some oil lease revenues derived from Allotment 3477–B). For the statute to be properly held tolled from 1950 to 1982, plaintiff has the heavy affirmative burden to show by a preponderance of the evidence (1) that the cause of action was inherently unknowable as to Spottedeagle during the period of time in which she was possessed of Allotment 3477–B (1950–1958); and (2) that based on the subsequent inheritance of the cause of action by Spottedeagle's heirs, said cause of action was inherently unknowable not only as to herself from the date she inherited an interest in Allotment 3477–B (1964 to date of filing in 1982), but also for the interim five-year period during which her husband, James Red Fox, was possessed of his interest in Allotment 3477–B (1958–1962).[8]

#### (i) *Spottedeagle: 1950–1958*

The initial inquiry in addressing the question of whether the statute of limitations was tolled from the exchange date and continuously thereafter during the lifetime of Spottedeagle is—whether during said period the fact of the accrual of said cause of action, as to her, was inherently unknowable.

The maximum period of time, subsequent to the exchange in 1950, the statute of limitations could potentially be chargeable against Spottedeagle, is approximately eight years, *i.e.,* from the date of the exchange to the date of Spottedeagle's death in 1958. Clearly then, were the cause of action inherently *unknowable* to Spottedeagle for less than two of these eight years, our inquiry would be at an end. This is so because there is but one cause of action which accrued in 1950, and once the statute would have run as to Spottedeagle herself, there would have been no surviving cause of action inuring to the benefit of her son, James Red Fox, and in particular the plaintiff.[9]

With regards to the threshold question, *supra,* the plaintiff contends that because of Spottedeagle's incapacities, knowledge of the accrual of her cause of action in 1950 was inherently unknowable continuously to the date of her death in 1958. Proffered in support of the foregoing, plaintiff states that Spottedeagle (1) spoke only limited English; (2) "was unable" to understand the transaction; (3) "would not have" un-

---

**8.** We note here that while we assume, for purposes of discussion, without deciding, the inheritability of Spottedeagle's cause of action, the parties remain in disagreement over the issue. Our research has disclosed no *definitive* case law on the issue. We find said assumption appropriate, however, as our jurisdictional findings relative to the statute of limitations contained in § 2501 provide a sound basis for deciding this case, irrespective as to the *result* which would obtain were Spottedeagle's cause of action found to be or not to be inheritable. By way of limited comment, however, we note that suits by heirs to recover property transferred by a decedent are generally held to be efficacious under special circumstances which appear potentially applicable here. *See* 26A C.J.S. *Descent & Distribution* §§ 85(d) and (e) (1956) and authorities cited therein.

**9.** *See id.*

derstood the terms of the transaction; and (4) "was incompetent to execute the deed." Plaintiff's Motion for Summary Judgment, August 1, 1983, at Appendix (answers to interrogatories).

In opposition to plaintiff's assertion of the alleged incapacities of Spottedeagle, defendant replies that:

> The normal procedure within the Bureau of Indian Affairs is to have an interpreter present for all major transactions where a person may have difficulty with English. There is no reason to believe that practice was not followed here.

Defendant's Opposition Brief, October 4, 1983, at 6. While defendant's reply seeks to dilute the vitality of any inferences to be drawn from plaintiff's contention regarding Spottedeagle's incapacities, *supra,* and further given that we are fully cognizant of the well-settled presumption that a federal official will do his duty, we are not unmindful that the foregoing reply does not *deny* the facts asserted by plaintiff. Accordingly, we accept plaintiff's assertion, on these facts, that Spottedeagle was unable to understand the terms of the transaction so that the status of the minerals on Allotment 3477–B was "inherently unknowable" as to Spottedeagle. Said conclusion, we find, is entirely consistent with the Federal Circuit's pronouncement that "the 'inherently unknowable' doctrine stands for no more than that the 'statute will not begin to run until [the injured party] ... learns or reasonably should have learned of his cause of action.'" *L.S.S. Leasing Corp.,* 695 F.2d at 1366, *quoting Japanese War Notes Claimants Ass'n,* 373 F.2d at 359. Because no creditable evidence was proffered by defendant, rebutting the plaintiff's showing that Spottedeagle did not "learn or reasonably should have learned of [her] cause of action" prior to her death in 1958, § 2501 was, therefore, continuously tolled from the date of the exchange in 1950 until her death in 1958. *Id.*

### (ii) *James Red Fox: 1958–1962*

Regarding tolling premised on inherent unknowability relative to James Red Fox, plaintiff's case is far less persuasive. It is plaintiff's position that when James Red Fox inherited his interest in Allotment 3477–B in 1958, and the associated cause of action relative to the exchange of allotments from his mother, Spottedeagle, the statute remained continuously tolled through his death on November 7, 1962. Although said issue is not specifically addressed by plaintiff, as to James Red Fox, we assume her argument for tolling remains based on inherent unknowability.

Because, however, no evidence was proffered establishing the presence of any incapacities or impediments on which we could reasonably find a basis for tolling, we cannot agree with plaintiff's bland assertion that the statute remained tolled as to James Red Fox from July 31, 1958 to his death on November 7, 1962. We reach this conclusion not because some particular demonstrative evidence *shows* that James Red Fox did in fact *know* that there were no mineral rights accompanying Allotment 3477–B, but because plaintiff herself points to *no* facts or evidence which establish that James Red Fox *did not* or *could not* have known of the accrual of the cause of action by the exercise of reasonable diligence. We remind plaintiff that the law is settled that the burden is on *her* to establish "tolling" once a *prima facie* showing exists that the "all events test" has been met fixing the proper accrual of the cause of action. *Willcox v. United States,* 3 Cl.Ct. 83, 85 (1983), *aff'd,* 769 F.2d 743 (Fed.Cir. 1985). Absent some specific proof, and we find none, supporting the allegation of inherent unknowability as to James Red Fox, we cannot conclude that said burden has been carried. Accordingly, we hold that the statute commenced to run as to James Red Fox on July 31, 1958, the date he inherited Allotment 3477–B, the subject matter of said cause of action, and continued to run, *untolled,* until his death on November 7, 1962 (approximately 4 years and 3 months). Moreover, inasmuch as we find that the exchange approval, in 1950, gave rise to only a single cause of action, it necessarily follows that the six-year statute

of limitations ran untolled thereon during the foregoing four-year period.

### (iii) *Jennie Red Fox LaMear: 1962 to 1982*

Due to the absence of tolling during the four-year period following the inheritance by James Red Fox, *i.e.*, from July 31, 1958 to his death in November 1962, at the time plaintiff inherited her interest from her husband in 1962, the statute had but approximately one year and nine months remaining to run before said single cause of action would have been time-barred. Not surprisingly, however, plaintiff similarly avers that the statute, as to her, was also continuously tolled from 1962 to 1982, and concludes that as a consequence her petition in this court is timely. Said statute tolled, she argues, because it was not until "early 1982" when she learned that the land *received* by Spottedeagle (Allotment 3477–B) in the 1950 exchange with Yellow-owl did not contain subsurface mineral rights, and that the land *exchanged* (Allotment 1250–A) did not contain a reservation of subsurface mineral rights. This initial knowledge, in 1982, is alleged to have its genesis in a conversation with "Leonard Mountain Chief," a former member of the Blackfeet Tribal Business Council, who mentioned to plaintiff that he assumed she would be getting a lot of money from oil bonus payments being made regarding Allotment 1250–A. *See* response to Interrogatory No. 9 (April, 1983) attached to Plaintiff's Motion for Summary Judgment. On the follow-up inquiry by plaintiff, which ultimately led to the Solicitor for the Area Office in Billings, she was advised on July 27, 1982, that the minerals in Allotment 1250–A were conveyed to Yellowowl in the 1950 exchange. Surprisingly, however, in response to Interrogatory No. 9, plaintiff initially explains her knowledge, in point of time, inconsistent with her representation in a later October 18, 1983 affidavit, *infra*, wherein she states in the interrogatory response that:

> Plaintiff had no idea prior to the time that they received this response from the Area Office (*i.e.*, in 1982) that they were not the owners of the mineral rights under the allotment transferred to Rosie Wells. *Prior to this time, plaintiff thought* that *the mineral rights were still reserved* or *were owned by her* and the other heirs of Good Victory Red Fox and plaintiff had not made any inquiry before this time because this was the first time that plaintiff knew that any money was going to be distributed....

(emphasis added).

It is plaintiff's primary position, based on her answer to the interrogatory, that she did not know until 1982 that the mineral rights to Allotment 1250–A were *not* reserved to Spottedeagle after the 1950 exchange date; that there was an *unequal* exchange in 1950; and that the resulting cause of action accrued in 1950. The question is whether the mere assertion of the absence of knowledge by plaintiff, *ipso facto*, makes knowledge as to the existence of the cause of action inherently unknowable with respect to plaintiff. *Fitzgerald*, 553 F.2d at 228, teaches that if by reasonable diligence plaintiff discovers or could have discovered the injury and the basis of the lawsuit, then at that point in time the cause of action is *not* inherently unknowable and the statute begins to run. Needless to say, because of our mandate to strictly construe such exceptions where as here the statute of limitations is jurisdictional, proof of tolling for said 18-year period is indeed an exceptionally burdensome showing. *Bevelheimer v. United States*, 4 Cl.Ct. 558, 561 (1984); *Jones*, 9 Cl.Ct. at 294.

We believe the evidence compels the finding that *at the latest* plaintiff was sufficiently apprised of her cause of action in 1964, or by reasonable diligence should have been so apprised, as to cause the statute to begin to run as of that year. The probative evidence so showing may be summarized as follows:

(i) The trust patent to Yellowowl in 1922, conveying Allotment 3477–B, is *a public record;* specifically stated therein is the fact that the mineral rights were reserved to the United States for the benefit of the Tribe; thus, said record established, for all

to see, that Yellowowl could not and did not convey mineral rights in the 1950 exchange;

(ii) On April 17, 1964, upon the receipt of the inventory of property possessed by James Red Fox at his death in 1962, plaintiff, at the very latest, *first* learned of the exchange in 1950; in fact, this was admitted in response to Interrogatory No. 7;

(iii) Notice to plaintiff of James Red Fox's interest in *any* "mineral rights" at his death are separately identified on the inventory of Indian Trust Lands. In fact, such interests were highlighted by *"all caps"*;

(iv) Those estate papers *do not* disclose that James Red Fox, plaintiff's spouse, inherited the *mineral rights to either* Allotment *1250–A* or *3477–B* and was possessed thereof at his death; and

(v) The estate papers' listing of "MINERAL RIGHTS ONLY," as to holdings *other than* Allotments 1250–A and 3477–B, circumstantially evidences notice to plaintiff that if said inventory did *not* show that her husband owned mineral rights in Allotment 1250–A (or 3477–B), something was amiss. This is particularly true in view of plaintiff's response to Interrogatory No. 9, *supra,* in which she states "[p]rior to [1982] plaintiff thought the mineral rights were ... owned by her and other heirs of [Spottedeagle]."

The foregoing establishes that plaintiff by reasonable diligence could have discovered the basis of this lawsuit by late 1964. Plaintiff's inconsistent affidavit, prepared *after* the Interrogatory No. 9 was submitted is also circumstantially probative thereof. As previously indicated, *supra,* she stated in response to Interrogatory No. 9 (April, 1983) that prior to 1982 she believed "that the mineral rights [to Allotment 1250–A] were *still reserved* or *were owned by her* and the other heirs of [Spottedeagle]." However, in a later (October 18, 1983) affidavit, plaintiff attempts to rehabilitate herself from the effect this answer to said interrogatory undoubtedly implies relative to her knowledge in 1964 and thereafter. Said affidavit states:

2. That, *until the early spring of 1982, the plaintiff did not know that Good Victory Red Fox had ever owned the mineral rights under Allotment No. 1250–A* either prior to or after her exchange of this allotment for Allotment No. 3477–B with Rosie Yellowowl Wells in 1950.

Affidavit of Jennie Red Fox LaMear, October 18, 1983, at 1 (emphasis added). The clear substance of the matter is that in her response to the interrogatory plaintiff categorically stated that *"prior to [1982]"* she thought that she (and other heirs of Spottedeagle) were the owners of the mineral rights under Allotment 1250–A. Whereas in the affidavit she recants and avers (six months later) that "until ... 1982 [she] did *not* know that [Spottedeagle] *had ever* owned mineral rights under Allotment 1250–A." *Id.* (emphasis added). Plaintiff cannot have it both ways. Either she thought the "heirs" of Spottedeagle, *including her husband* and then herself, possessed the mineral rights to 1250–A, or she did not. In reaching our ultimate conclusion, we resolve, as we must, this obvious inconsistency, and any reasonable inferences therefrom, against the plaintiff as fairness necessarily dictates. Coupled with plaintiff's knowledge in 1964 of the content of the inventory of the estate of James Red Fox and all the other factors heretofore discussed and considered, we find that plaintiff had sufficient knowledge in 1964 as to what transpired pursuant to the 1950 exchange of allotments to put her on notice, as a reasonable person, to inquire as to the status of the mineral rights to Allotment 1250–A. We believe that the unadulterated truth, *i.e.,* what plaintiff actually knew and when did she know it, is manifested in the last clause in the quoted response to Interrogatory No. 9, *supra.* Therein, she voluntarily explains why an inquiry was *not* earlier pursued by stating that:

... plaintiff had not made any inquiry before this time [1982] because this was the first time that plaintiff knew that

any money was going to be distributed....

Had plaintiff undertaken to make inquiry in 1964, just as she did in 1982, we are confident plaintiff would have been apprised of the same conclusion in 1964, *i.e.*, the minerals to Allotment 3477–B were reserved to the United States, and the mineral rights to 1250–A passed to Yellowowl in the exchange. Affording plaintiff a reasonable time to have made such an inquiry (after the estate papers were received in April, 1964), on a tacking theory, we hold that the statute commenced running for its final one year and nine months sometime in late 1964, when plaintiff could have by reasonable diligence discovered her cause of action, and ran out conclusively at least by December 31, 1966. This court is constrained to so hold because the statute begins to run *when* the "plaintiff discovers, or by reasonable diligence could have discovered the basis of the lawsuit." *Fitzgerald*, 553 F.2d at 228. In fact, we further find that even absent a "tacking theory" with the statute properly commencing to run against plaintiff, *ab initio*, on or about December 31, 1964, her petition filed on November 16, 1982, would also be outside of the six-year requirement and time-barred.[10]

*(iv) Tolling of 28 U.S.C. § 2501 Due to the Existence of a Trust Relationship*

■ Plaintiff's final attempt to avoid the bar of the statute of limitations is based on her perception that when trust relationships exist, the statute of limitations regarding causes of action by the beneficiary against the trustee does not begin to run until the trust has been terminated. Thus, plaintiff contends that the statute here has been continuously tolled since 1950, and remains tolled to this date as Congress has yet to abolish the trust relationship governing plaintiff's allotment established by the GAA, and made permanent by the IRA. In

support of this rule of law, plaintiff relies primarily on *Manchester Band of Pomo Indians v. United States*, 363 F.Supp. 1238 (N.D.Cal.1973). Indeed, that case does hold to the exact proposition as alleged by plaintiff:

> [W]here, as here, there is a fiduciary relationship between the parties, the universal rule is that "a statute of limitation does not begin to run where there is a fiduciary relationship between the parties until the relationship is repudiated."

*Id.* at 1249, *quoting Kasey v. Molybdenum Corp. of America*, 336 F.2d 560, 569 (9th Cir.1964).

Unfortunately for plaintiff, however, that "universal rule" has been expressly rejected with regard to Indian trusts created by such acts as the GAA, by both the predecessor Court of Claims, and the Federal Circuit. *Capoeman v. United States*, 440 F.2d 1002 (Ct.Cl.1971); *Menominee Tribe of Indians v. United States*, 726 F.2d 718, 721–22 (Fed.Cir.1984). As stated by the Federal Circuit in *Menominee Tribes:*

> The Court of Claims explicitly refused in comparable cases to toll the six-year limitations period of 28 U.S.C. § 2501 despite the fact that those Indian plaintiffs or the then-involved Indian property were under trust or incompetent status. [citing *Capoeman*, 440 F.2d at 1003] The court specifically ruled that that principle did *not* apply to Indians, ... *who were suing on claims that the Government has never acknowledged on the merits.*

*Id.* at 721 (emphasis added). As the very existence of this litigation testifies that the defendant herein has not "acknowledged" plaintiff's claims on the merits, the case at bar is readily distinguished from the facts in *Manchester Band of Pomo Indians;* thus, plaintiff's argument for tolling cannot prevail. The law in this circuit is firmly established that § 2501 does not toll for

---

**10.** Undoubtedly, the reader will observe that we are not attempting to count the running and tolling of the limitations period to the exact days. This is unnecessary because the vastness of the 18-year period, out of which we can find

an approximate two-year untolled period (as well as a new six-year untolled period), makes such meticulous calculations without significance as to the end result.

Indian claims for breach of fiduciary duty against the government simply because the trust relationship has *not* been terminated. *See also Jones*, 9 Cl.Ct. at 295, 296.

V. *Conclusion*

Consistent with the foregoing, we grant defendant's R.U.S.C.C. 12(b)(1) motion to dismiss because plaintiff's action is time-barred by the statute of limitations contained in 28 U.S.C. § 2501 (1982). Regarding those additional grounds asserted in defendant's motion to dismiss, we express no opinion. Alternatively, defendant's motion for summary judgment is denied. Likewise, plaintiff's cross-motion for summary judgment is denied. The Clerk shall dismiss the petition. No costs shall be awarded.

IT IS SO ORDERED.