Errol **BROWN, Milford L. Brown, Ollie Brown, Randall Brown, Mary Cadavas, Lupe Chiago, Eula Columbus, Beverly J. Hayes, Charlene L. Manuel, Shirley Martinez and Trudymontiel Villa, for themselves and on behalf of all Lessors under Lease B–45, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 99–5049.

United States Court of Appeals, Federal Circuit.

Nov. 3, 1999.

Richard W. Hughes, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, LLP, Santa Fe, New Mexico, argued, for plaintiffs-appellants.

Katherine W. Hazard, Attorney, Appellate Section, Environment & Natural Resources Division, Department of Justice, Washington, DC, argued, for defendant-appellee. With her on the brief were Peter Coppelman, Acting Assistant Attorney General, Elizabeth Ann Peterson and James M. Upton, Attorneys, General Litigation Section. Of counsel on the brief were Maria Wiseman, and James Wong, Attorneys, Office of the Solicitor, U.S. Department of Interior, Washington, DC.

Before MAYER, Chief Judge, MICHEL and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

Errol Brown *et al.* ("Brown"), Native Americans, sued the United States on February 7, 1991 in the United States Claims Court, renamed the United States Court of Federal Claims, alleging breach of fiduciary duties by the Secretary of the Interior (the "Secretary") in connection with administration of leases for tribal land. The trial court dismissed four of the five claims as time-barred and, alternatively, as failing to state a claim upon which relief could be granted. *See Brown v. United States,* 42 Fed. Cl. 538 (1998). Brown appeals the trial court's decision, but only with respect to two of the dismissed claims. Because we conclude that Brown has not alleged facts sufficient to toll the statute of limitations and these two claims had accrued more than six years prior to the day the suit was filed, we affirm.

## PROCEDURAL BACKGROUND

This is the second appeal we have heard in this case. The first appeal arose after the trial court dismissed the complaint for lack of subject matter jurisdiction. *See Brown v. United States,* 32 Fed. Cl. 509 (1994). In *Brown v. United States,* 86 F.3d 1554 (Fed.Cir.1996), we reversed the trial court, holding that the Court of Federal Claims did in fact possess subject matter jurisdiction over Brown's claims based on a fiduciary duty arising from 25 U.S.C. § 415 (1994), although expressly declining to determine the scope of that duty in the first instance.

## FACTUAL BACKGROUND

The Plaintiffs–Appellants are all members of the Salt River Pima–Maricopa Indian Community located near the City of Scottsdale, Arizona. Each member was an allottee of at least one 10–acre parcel of reservation land under the General Allotment Act. Act of Feb. 8, 1877, ch. 119, 24 Stat. 388 (codified as amended at 25 U.S.C. §§ 331–34, 339, 341–42, 348–49, 354, & 381 (1994)). On June 1, 1964, pursuant to the leasing power extended to them by the Act of August 9, 1955, § 1, 69 Stat. 539, (codified as amended at 25 U.S.C. § 415 (1964)), the allottees (or their predecessors in interest) collectively leased their land as a 160–acre parcel to Stovers, Inc. ("Stovers") for use as a commercial golf course for a term of 25 years.

The lease was approved by the Secretary, as required under section 415, and signed by each of the individual allottees as the collective lessors of the property. The lease provided that the lessee would pay to the lessors a fixed ground rental in quarterly installments plus a quarterly payment equal to a percentage of the golf course's gross receipts. The lease also required that a certified public accountant of the lessee's choice submit certified quarterly statements of gross receipts to both the lessors and the Secretary. Additionally, the lease included a "rental adjustment" clause that mandated review and adjustment of the rental provisions of the lease by the Secretary at not less than five-year intervals.

In 1975, after the passage of the Indian Self–Determination Act, Pub.L. 93–638, 88 Stat. 2203 (codified as amended at 25 U.S.C. §§ 450 *et seq.* (1994)), the Salt River Tribe (the "Tribe") asked to take over the Department of the Interior's Bureau of Indian Affairs' (the "BIA's") realty program for all leases on the reservation, including the lease at issue. The BIA complied with the request by express contract with the Tribe, whereby the Tribe assumed control over the day-to-day administration and compliance review of all leases.

Stovers encountered various difficulties in the early years of the lease, leading to a series of transfers of the leasehold interest. The lessee at the center of this controversy is Lawrence G. Malanfant, who began acquiring a controlling interest in the then Pima Inn and Golf Resort, Inc. ("Pima") in 1978. On July 20, 1979, Malanfant sought to extend the lease term and proposed to make specific improvements to the property. Approximately two months later in 1979, one of the allottees, Virgil Brown, who is not a party to this suit, asked Pima for certified financial statements of gross receipts for 1977 and 1978. There is no indication in the record that Pima complied with Virgil Brown's request. Also in September, 1979, Virgil Brown, on behalf of the other allottees, authorized an agent to audit Pima. There is no indication in the record that an audit was conducted as a result of this authorization, or otherwise.

In October and November 1986, Virgil Brown wrote to the Tribe requesting copies of current accounting statements and stating his belief that Pima was in breach of the lease. In April 1987, the Tribe received a non-certified statement of receipts from Pima, which it forwarded to the allottees. In May 1987, Virgil Brown hired certified public accountant Robert Rose to conduct an audit. Rose completed the audit on May 29, 1987 and concluded that Pima had underreported its gross receipts. In December 1987, Virgil Brown sent letters to the BIA and the Tribe requesting that each send a "show cause"

for cancellation" letter to Pima based on the findings of the audit. The BIA acknowledged there might be a problem with the lease and requested a report from the Tribe, as manager of the lease.

In 1988, the Tribe launched an investigation into Pima's compliance with the lease terms. The Tribe conducted its own audit, confirmed Mr. Rose's earlier findings and sent a "show cause" letter to Pima on December 16, 1988. Pima responded on December 28, 1988, urging that the lease not be canceled. The Tribe and Pima exchanged further correspondence and despite the lease expiration date of June 30, 1989, Pima continued to occupy the leased premises into 1990 when the Secretary evicted Pima.

## DISCUSSION

■ Because jurisdictional determinations are questions of law, we review *de novo* the United States Court of Federal Claims' decision to dismiss the suit as barred by the statute of limitations. *See Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998). The relevant statute of limitations provides: "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1994). Therefore, to be viable, the claims in the instant case must have accrued on or after February 7, 1985. However, a claim against a fiduciary, here the Secretary, accrues only when there is a preexisting duty to act, and the beneficiary then "knew or should have known of the breach." *Jones v. United States,* 801 F.2d 1334, 1335 (Fed. Cir.1986).

Of Brown's five original claims, four were dismissed but only two are before us on appeal. The second original claim alleges that the United States failed to determine whether the gross receipts reported by the lessee were accurate, and thus, contrary to 25 C.F.R. § 162.8 (1999), failed to discover that the lessee was substantial-

ly underreporting its gross receipts. The fourth original claim actually consists of two distinct claims: one claim alleges that the Secretary wrongfully approved the lease for a 25-year term and the other that the Secretary failed to exercise his authority to adjust the rental rates to account for the changing economic value of the land. We first address the statute of limitations with respect to each of these three separate claims in turn. We think it questionable the United States owed any of the duties asserted by Brown in this instance; however, we will assume their existence for purposes of our statute of limitations analysis.

## I. The alleged failure of the U.S. to determine that the lessee was underreporting gross receipts.

On the claim that the United States failed to determine that the lessee was substantially underreporting gross receipts, Brown argues that the statute of limitations was tolled due to the allottees' excusable ignorance of their claim until they actually knew of the underreporting as a result of the 1987 audit. Brown argues that as largely uneducated and unsophisticated Native Americans, the allottees were unaware of any breach by the lessee or any breach of fiduciary duty by the United States until Virgil Brown informed the collective allottees of actual underreporting.

Brown cites *LaMear v. United States*, 9 Cl.Ct. 562 (1986) and argues that, by analogy, it supports his contention that the allottees were excusably ignorant of their claim. *LaMear* is no more binding on us than on the trial judge. Moreover, the facts are not analogous. In *LaMear*, the plaintiff's mother-in-law ("Spottedeagle") was not charged with knowledge of the accrual of a cause of action due to her mental incapacity. *See id.* at 572. Spottedeagle exchanged at even price her allotted parcel with mineral rights for one without mineral rights. *See id.* at 564. She spoke limited English, was unable to understand the land swap transaction, would not have understood the terms of the transaction, and was legally incompetent to execute the deed. *See id.* at 571–72.

Brown has not alleged mental incompetence on behalf of the allottees comparable to that of Spottedeagle. To the contrary, at least one of the allottees, Virgil Brown, though not a party to the suit, demonstrated significant mental activity and legal sophistication by appointing an agent, arranging an audit and discovering the lessee's underreporting. We see no reason why Virgil Brown's capacity and sophistication should not be imputed to the rest of the allottee-lessors as he was both a fellow lessor, fellow member of the Tribe and a leading activist among the allottees. Furthermore, the remaining allottees acknowledge that Virgil Brown was the one who informed them that Pima was underreporting after the 1987 audit, establishing at least some communication between Virgil Brown and the other allottees. Thus, Brown has not demonstrated that the statute of limitations was tolled due to mental incompetence or other excusable ignorance on behalf of the allottees.

In 1979, after Malanfant began acquiring a controlling interest in Pima, Virgil Brown became suspicious enough of Pima's reporting practices to request copies of certified gross receipts for 1977 and 1978. In September of the same year, Virgil Brown sought an audit of Pima. These two acts performed by Virgil Brown as an allottee-lessor and member of the Tribe sufficiently indicate that the collective allottees knew or should have known of Pima's possible underreporting and underpaying as early as 1979. Because the plaintiffs-appellants knew or should have known of the underreporting and underpayment as of 1979 and have failed to show that, collectively, they were excusably ignorant of the breach by the lessee, we hold that the statute of limitations has expired with respect to their claim that the United States breached a fiduciary duty by failing to discover that Pima was underreporting its gross receipts.

## II. The alleged improper authorization of the 25–year lease.

■ Next, Brown challenges the dismissal of the first part of the fourth original claim. This claim asserts that the Secretary improperly authorized a lengthy lease term, e.g., 25 years, without regard for the rapidly increasing economic value of the land, in violation of his alleged trust responsibilities. Despite the claim accrual date of September 1, 1964 when the Secretary's agent actually signed the lease, Brown argues that the claim is not time-barred. Brown contends that the statute of limitations should have been tolled on the claim due to excusable ignorance on behalf of the allottees until no earlier than 1986. Relying again on *LaMear*, Brown argues that although the allottees may have known of the duration of the lease, they simply were not sophisticated enough to realize the impropriety of entering into such a long-term lease.

In 1986, the allottees commissioned Warren F. Smith to perform a study of similarly-situated golf courses to determine the rate of return of the other courses. Brown urges that prior to 1986, the allottees lacked the sophistication to understand that the length of the lease term was economically unjustified. However, the allottees' appointment of Mr. Smith in 1986 effectively rebuts Brown's contention that the allottees lacked sophistication. By appointing Mr. Smith, the allottees demonstrated sufficient sophistication to show that they were capable of obtaining the information necessary to discern the economic propriety of a 25–year lease. Brown does not offer, nor can we identify, any reason why the level of sophistication displayed by the allottees in appointing Mr. Smith in 1986 should not be imputed to the allottees back in 1964.

Brown instead argues that even if the allottees were aware of the economic impropriety of the lease term, they believed that they were powerless to affect the terms of the original lease due to their minimal role in the negotiations leading to the lease signing. Since Brown alleges breach of fiduciary duty arising from the Secretary's approval of the lease, the relevant question is only whether the allottees knew or should have known of the Secretary's alleged breach prior to 1985. Whether or not the allottees believed they could affect the terms of the lease is a separate and unrelated question. Brown has not demonstrated that the allottees were excusably ignorant of their claim, and therefore we hold that the allottees knew or should have known of the alleged breach as of the 1964 lease signing, for the 25–year term was expressly set forth in the lease which all allottees signed.

Because we find that the claim fully accrued as of the day the Secretary's agent signed and approved the lease and Brown has failed to establish that the allottees were excusably ignorant of the claim, we hold that the statute of limitations has expired with respect to Brown's claim that the United States breached a fiduciary duty by improperly authorizing a lease term of 25 years.

## III. The alleged failure of the U.S. to adjust the rental rate of the lease.

■ Finally, Brown challenges the dismissal of the second part of the fourth original claim. This claim alleges that the Secretary failed to exercise his duty to increase the lease rental rates to account for the increasing economic value of the land, in violation of his trust responsibilities. The basis of this claim is 25 C.F.R. § 162.8, which provides that such a lease "shall provide for periodic review, at not less than five-year intervals, of the equities involved." Nearly identical language appears in paragraph seven of the lease.[1]

---

1. Paragraph seven provides, in relevant part, that the rental provisions "shall be subject to review and adjustment by the Secretary at not less than five-year intervals in accordance with the regulations in 25 C.F.R. § 131 (1964)." In actuality, the lease is even more specific than the regulation because the lease provision explicitly identifies the Secretary as

As above, Brown initially challenges this dismissal by asserting that the statute of limitations should have been tolled on the claim due to excusable ignorance on behalf of the allottees. Brown argues that the allottees were unaware of the Secretary's ability to adjust rental provisions at least until 1986 when the allottees retained assistance in determining a fair value for the lease. In support, Brown again relies on *LaMear*.

However, as we have explained above, Brown has not alleged that the allottees' level of incompetence to manage their affairs reached the level shown in *LaMear*. Furthermore, Brown's argument fails to account for the allottees' continued lease amendment negotiations, which began as early as 1975. We infer from the allottees' lease amendment negotiations that they were familiar with the terms of the lease, which included language nearly identical to that relied upon by Brown in this claim. We also find it significant, as did the trial court, that the allottees (or their predecessors in interest) were all signatories of the lease. As such, they are justifiably charged with a knowledge of its contents.

Brown further contends that the statute of limitations was tolled because the allottees were not aware that the Secretary had not adjusted the rental provisions. In support, Brown argues that the rental checks received by the allottees each quarter were of such minimal value that the allottees never noticed that they never changed in value. We find this argument without merit. Constant quarterly ground rental payments of any value were sufficient to place the allottees on notice that the ground rental terms had not changed during the duration of the lease.

Because the allottees demonstrated familiarity with the lease terms and those terms explicitly identify the alleged duty sued upon in this claim, we hold that the allottees were not excusably ignorant of the Secretary's alleged duty to review and adjust rental provisions of the lease.

the party responsible for reviewing and ad-

Alternatively, Brown challenges the dismissal of this claim based on the continuing claim doctrine. Brown argues that the Secretary had a duty to review the equities involved under the lease beginning five years after the lease began. Since the Secretary never conducted any equity review then or at any time thereafter, Brown argues, this duty recreated itself at each moment in time until the expiration of the lease. Brown concludes that his claim is not barred by the statute of limitations insofar as it alleges a breach within the statute of limitations period, which began on February 7, 1985.

■ To properly address Brown's continuing claim argument, we begin with the language of the regulation upon which he relies. To the extent the trial court's determination turned on its interpretation of 25 C.F.R. § 162.8, it presents questions of law subject to *de novo* review. *See United States v. Boeing Co.*, 802 F.2d 1390, 1393 (Fed.Cir.1986) ("The interpretation of regulations which are incorporated into government contracts is a question of law which this court is free to resolve.") (citation omitted).

Section 162.8 requires periodic review of the equities "at not less than five-year intervals." We find this timing requirement to be ambiguous. "[N]ot less than five-year intervals" could be interpreted to mean "greater than or equal to five-year intervals." Read in this manner, the regulation would be satisfied by conducting an equity review as infrequently as once every ten years or even less frequently. In the context in which the regulation was written, however, we think the more reasonable interpretation is one which requires a review of the equities at least every five years. Under this interpretation, the Secretary could review the equities more frequently, but would only be obligated to conduct an equity review at least every five years during the life of the lease.

justing the rental provisions.

Based on this interpretation, the first accrual of the instant claim occurred when the Secretary failed to conduct an equity review at the end of the first five years of the lease, in 1969. However, contrary to Brown's contention, this claim did not recreate itself at each moment in time thereafter. Rather, the claim did not arise again until the end of the subsequent five-year period. The statute of limitations with respect to the initial alleged breach began to run in 1969 and ended six years later, in 1975. At the end of next three successive five-year intervals, e.g., 1974, 1979 and 1984, a similarly occurring claim arose. Each then expired six years from the date it accrued. Therefore, the statute of limitations for the last claim, which arose in 1984, expired in 1990. Note that an additional claim did not arise in 1989 at the end of the final five-year period under the lease, because the obligation to adjust the lease's rental provisions became meaningless at its termination.

Because 1984 was the last time the claim accrued and 1984 was more than six years before the 1991 filing date of the complaint, we hold that the statute of limitations has expired with respect to Brown's claim that the United States breached a fiduciary duty by failing to review and adjust the rental provisions of the lease.

## IV. Failure to State Claims.

Because our holding that neither of the appealed claims satisfies the statute of limitations is dispositive of the appeal before us, we need not and do not reach the question of whether either claim is one upon which relief can be granted, as held in the alternative by the trial court.

## CONCLUSION

The summary judgment of dismissal of the appealed claims as time-barred, is therefore

*AFFIRMED.*