# United States Court of Appeals for the Federal Circuit

05-1104

HARVEY DUMARCE, KENNETH ERVIN DUMARCE,
COLLEEN RENVILLE DUMARCE, PAMELA RENVILLE,
and DENNIS L. DUMARCE, SR.,

Plaintiffs-Appellees,

v.

P. LYNN SCARLETT, Acting Secretary of the Interior,
DEPARTMENT OF THE INTERIOR,
and UNITED STATES,

Defendants-Appellants.

Michael Lawrence Dolan, Oppenheimer Wolff & Donnelly LLP, of Minneapolis, Minnesota, argued for plaintiffs-appellees. With him on the brief were David P. Graham and David A. Prange.

Kathryn E. Kovacs, Attorney, Appellate Section, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendants-appellants. With her on the brief were Thomas L. Sansonetti, Assistant Attorney General and Sydney Cook, Attorney. Of counsel were E. Ann Peterson, Attorney; and Cheryl Schrempp Dupris, Attorney, United States Attorneys Office, of Pierre, South Dakota.

Appealed from: United States District Court for the District of South Dakota

Judge Charles B. Kornmann

# United States Court of Appeals for the Federal Circuit

05-1104

HARVEY DUMARCE, KENNETH ERVIN DUMARCE, COLLEEN RENVILLE DUMARCE, PAMELA RENVILLE, and DENNIS L. DUMARCE, SR.,

Plaintiffs-Appellees,

v.

P. LYNN SCARLETT,Acting Secretary of the Interior,
DEPARTMENT OF THE INTERIOR,
and UNITED STATES,

Defendants-Appellants.

_____

DECIDED: May 4, 2006

_____

Before MICHEL, Chief Judge, LOURIE and LINN, Circuit Judges.

Opinion for the court filed by Chief Judge MICHEL. Dissenting opinion filed by Circuit Judge LOURIE.

MICHEL, Chief Judge.

Gale Norton, the Secretary of the Interior, the Department of the Interior, and the United States appeal the United States District Court for the District of South Dakota's grant of summary judgment based, ultimately, on its holding that plaintiff Colleen Renville DuMarce's ("DuMarce") Fifth Amendment takings claim was not time-barred. DuMarce v. Norton, 277 F. Supp. 2d 1046 (D.S.D. 2003) ("DuMarce"). On cross-motions for summary judgment, the trial court granted in part plaintiffs' motion for summary judgment, holding that the enactment of section 5 of Public Law No. 98-513, the Sisseton-Wahpeton Sioux Act of 1984, effected a taking of Indian land without just

compensation in violation of the Fifth Amendment.[1] The court denied defendants' Motion to Dismiss and Motion for Partial Summary Judgment which contended that DuMarce's takings claim was barred under the relevant statute of limitations. On appeal, the government argues that plaintiff's claim was barred by the six-year statute of limitations of 28 U.S.C. § 2401(a) because she filed her claim fourteen years after her cause of action accrued, which, the government contends, occurred when the government apprised her of all facts grounding her cause of action. Because we agree with the government that DuMarce's claim is time-barred, we reverse the trial court's grant of summary judgment to plaintiffs.[2]

## I.

In 1984, Public Law No. 98-513, the Sisseton-Wahpeton Sioux Act, was enacted. Section 5 of this Act prevented the conveyance of land by members of the Sisseton-Wahpeton Sioux Indian tribe by devise or by intestacy.[3] The purpose of this provision

---

[1] While the trial court granted DuMarce's motion in part, ruling that Public Law No. 98-513 effected a taking without just compensation, it declined to grant at that time the remainder of DuMarce's motion, namely, her requests for injunctive relief, reopening of her father's estate, and just compensation.

[2] Pamela Renville's ("Renville") claim is time-barred as well. DuMarce argues that, because the government failed to raise on appeal the statute of limitations defense with respect to the complaint of Renville, DuMarce's sister, the decision below with respect to Renville will stand. Thus, DuMarce asserts that her father's estate will be reopened and redistributed regardless of the outcome of this appeal, rendering the appeal moot. But although the district court's decision on the government's motion for summary judgment on statute of limitations grounds was rendered prior to the consolidation of DuMarce's case and Renville's case, the decision pertains not only to DuMarce but, following consolidation, to Renville as well. The outcome of this appeal therefore affects both DuMarce and Renville, and the appeal is not moot.

[3] Section 5 of Public Law No. 98-513 provides in relevant part that "no person shall be entitled by devise or descent to take any interest . . . less than two and one-half acres, or the equivalent thereof, in trust or restricted land within the reservation. Any interest less than two and one-half acres of a devisee or intestate distributee of a

was to remedy the problem of fractionation of land. Long ago, the government had given small tracts of land that were part of larger expanses of land to individual Indians. These Indians had then passed these tracts to their heirs, either by devise or through intestacy. Over the generations, this created the phenomenon of progressive fractionation. In addition to their decreasing size, these small tracts of land each became owned by several owners, each of whom had an undivided interest in that land. In many cases, one Indian would have an undivided interest in many different small tracts of land. Moreover, one tract of land was frequently owned by an increasing number of individual Indians. The cost to the government of managing the land and title paperwork was high, due to the many small tracts and the many undivided interests in each small tract. Over time, the expense to the government became excessive. The Act reduced this problem by preventing the transfer of an interest in land that was less than two and a half acres. Instead, such land would escheat to the Tribe.

The plaintiffs in this case inherited such land from their fathers (and brother). The various plaintiffs are Pamela Renville and Colleen Renville DuMarce, whose father's (Felix Renville) estate was probated on November 24, 1987, Harvey and Kenneth DuMarce, whose father's (Gerald DuMarce) estate was probated on December 27, 1996, and Dennis DuMarce, whose brother's (Gerald DuMarce) estate was probated on December 27, 1996. At the time their estates were probated, the Department of the Interior notified the individual plaintiffs that their individual interests would escheat to the Tribe pursuant to section 5 of Public Law No. 98-513 because they

---

decedent . . . shall escheat to the tribe and title to such escheated interest shall be taken in the name of the United States in trust for the tribe. . . ." Pub. L. No. 98-513, § 5, 98 Stat. 2411 (1984).

totaled less than two and a half acres.[4]  Fourteen and a half years after DuMarce received her November 24, 1987 Notice, Harvey, Kenneth, and Colleen Renville DuMarce filed suit (on June 26, 2002), alleging that the escheats "constitute an unconstitutional taking . . . in violation of the Fifth Amendment of the United States Constitution" and requesting just compensation, among other relief.  On December 17, 2002, Dennis DuMarce and Pamela Renville filed similar complaints.

Both parties in the suit brought by Harvey, Kenneth, and Colleen Renville DuMarce filed cross-motions for summary judgment.  The government alleged in its partial summary judgment motion that DuMarce was barred from bringing this claim by the six-year statute of limitations of 28 U.S.C. § 2401(a).[5]  DuMarce moved for summary judgment that, among other things, section 5 of the Act effected a taking without just compensation.  District Judge Charles B. Kornmann denied the government's combined motion for partial summary judgment and to dismiss, reasoning that DuMarce's claim was not barred by the statute of limitations because her claim had not accrued in 1987 as the government had breached its fiduciary duty to her, an Indian, by failing to inform her of her cause of action against the government.  DuMarce, 277 F. Supp. 2d at 1055.  The judge granted DuMarce's motion for summary judgment in part, holding that section

---

[4]     The "Notice To All Persons Having An Interest In The Subject Matter Of This Proceeding," dated November 24, 1987, informed DuMarce that "[p]art of the decedent's land interests on the Sisseton Reservation are subject to Pub. L. 98-513. . . . In addition, if the decedent's interest in a parcel of land amounts to less than 2 ½ acres, then such interest escheats to the Tribe. . . .   Therefore, as set forth above, the decedent's respective interests identified on Exhibit B, which amount to less than 2 ½ acres, shall escheat to the United States of America in Trust for the Sisseton-Wahpeton Sioux Tribe of the Lake Traverse Reservation."

[5]     28 U.S.C. § 2401(a), titled "Time for commencing an action against the United States," provides in relevant part: "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

5 of the Act did effect a taking without just compensation. Id. at 1056-67. Based on this May 15, 2003 decision, Dennis DuMarce and Pamela Renville filed similar motions for summary judgment in their separate cases. All of the cases were consolidated on August 4, 2004. On October 22, 2003, the court entered a final Order enjoining "any further use of Section 5 of Public Law 98-513" and ordering the Department of the Interior to "reopen the estates" and "proceed[ ] through the probate procedures as though Section 5 of Public Law 98-513 did not and does not exist." See DuMarce v. Norton, Nos. 02-1026, -1040, -1041 (D.S.D. Oct. 22, 2003). The government appeals the grant of DuMarce's summary judgment motion, based on the running of the statute of limitations.

DuMarce requested other forms of relief in addition to just compensation, including reopening of Felix Renville's estate and an injunction prohibiting the government from escheating land to the Tribe. Yet in its May 15, 2003 decision the trial court held that the Sisseton-Wahpeton Sioux Act effected a taking without just compensation but "refrain[ed] from ordering any relief at [that] time, save, of course, a declaration that section 5 is unconstitutional." DuMarce, 277 F. Supp. 2d at 1056. Nonetheless, in a subsequent Judgment of Dismissal, dated September 29, 2004, the trial court ordered and adjudged, inter alia, that the government is "permanently enjoin[ed] and restrained . . . from any further use of Section 5 of Public Law 98-513." See DuMarce v. Norton, Nos. 02-1026, -1040, -1041 (D.S.D. Sep. 29, 2004). Thus, because of the permanent injunction, this judgment of the trial court is appealable even though not a final judgment. Because in this case district court jurisdiction was based

on a takings claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), we have jurisdiction under 28 U.S.C. § 1295(a)(2).

II.

A.

The government argues that the district court erred by holding that the government breached its fiduciary duty by not informing DuMarce of a possible cause of action against the government. The government agrees that it owed DuMarce, a member of the Indian tribe, a fiduciary duty. But, the government asserts, its fiduciary duty did not include informing DuMarce of a possible cause of action against the government. The government contends that it fulfilled its fiduciary duty simply by informing her of the facts pertaining to her potential cause of action. The government clearly did so by notifying her that the land in question would escheat to the Tribe pursuant to section 5 of the Act because it was less than two and a half acres.

DuMarce counters that the government's fiduciary duty to her also requires it to inform her of a potential cause of action. We conclude that the government is correct.

For decades, Federal Circuit precedent has required the government as trustee to inform Indian beneficiaries of the facts giving rise to potential causes of action. In Menominee Tribe of Indians v. United States, 726 F.2d 718 (Fed. Cir. 1984), the government held in trust for the Indians a plot of forest land which the government, as trustee, was charged with managing. The Indian plaintiffs asserted a breach of fiduciary duty against the government for mismanaging the forest, contending that the government had obtained too low a harvest income on the land and that it knew or should have known that the limited harvest was deleteriously low. Because the Indians

filed suit more than six years after the statute of limitations had run, they argued that the government's breach of fiduciary duty had tolled the statute because the Tribe was "excusably ignorant of the facts underlying their claim until it began itself to manage the forest. . . ." Id. at 720. Holding that the statute of limitations was not tolled, this Court stated, "It is settled . . . that [the statute of limitations] is not tolled by the Indians' ignorance of their legal rights." Id. at 721 (citing Affiliated Ute Citizens of the State of Utah v. United States, 199 Ct. Cl. 1004 (1972)) (emphasis in original). "As to the facts, there is here plainly no such concealment (e.g., imposition of secrecy) by the defendant as would admittedly toll limitations." Id. (citing Spevack v. United States, 182 Ct. Cl. 884 (1968)) (emphasis in original). "In short, '[t]he facts were all available,' and the running of limitations would not be tolled as if they were 'unknowable.'" Id. (quoting Affiliated, 199 Ct. Cl. at 1004).

Similarly, in Brown v. United States, 195 F.3d 1334 (Fed. Cir. 1999), Indian plaintiffs alleged breach of fiduciary duty for misadministration of leases of tribal land. Under the General Allotment Act, each member of the Salt River Pima-Maricopa Indian Community was allotted at least one 10-acre parcel of land. As permitted under the Act, the allottees collectively leased their land as a 160-acre parcel to a corporation for use as a commercial golf course. The lease provided that the lessors would receive fixed quarterly rental payments in addition to a percentage of the gross receipts of the golf course. The receipts were to be submitted to the lessors and the Secretary. After passage of the Indian Self-Determination Act, the Tribe took over all leases on the reservation, including the one at issue, whereby the Tribe assumed control over the administration of and compliance with the leases. Several years later, in 1979, one of

the lessors, Brown, requested a certified financial statement of gross receipts and an audit. Upon realizing that the corporation had underreported the gross receipts and therefore underpaid rental income to the lessors, the lessors filed suit in 1999, fourteen years after the statute of limitations had run. The allottees charged the United States with breach of fiduciary duty, maintaining that the government had breached its duty by failing to determine whether the gross receipts reported by the lessee were accurate and thus failed to discover that the lessee was substantially underreporting its gross receipts. The Indians asserted that the statute of limitations should be tolled because of their "excusable ignorance of the claim until they actually knew of the underreporting as a result of the audit." Id. at 1338. We held that the statute of limitations was not tolled because the Indians "knew or should have known of Pima's possible underreporting and underpaying as early as 1979," the date on which Brown requested the certified gross receipts and, thus, that plaintiffs "failed to show that they were excusably ignorant of the breach by the lessee." Id.

Furthermore, Brown claimed that the Secretary breached its fiduciary duty by negotiating a lease for 25 years, without regard for the rapidly increasing value of the land, in violation of its trust duties. Again, Brown asserted that the statute of limitations should have been tolled because of the Indians' "excusable ignorance" because "they believed that they were powerless to affect the terms of the original lease due to their minimal role in the negotiations leading to the lease signing." Id. at 1339. We explained that plaintiffs' "belie[f] that they were powerless to affect the terms of the original lease . . . is a separate and unrelated question. Brown has not demonstrated that the allottees

were excusably ignorant of their claim, and therefore we hold that the allottees knew or should have known of the alleged breach. . . ." Id.

Finally, in Hopland Band of Pomo Indians v. United States, 855 F.2d 1573 (Fed. Cir. 1988), the government held land in trust for the resident Indians. The California Rancheria Act terminated this trust relationship. Upon termination of the trust relationship, the land was to be sold and the proceeds to be distributed to eligible individual Indians. Also upon termination of the trust, certain services and benefits provided by the government to the Indians would cease. The trust relationship would formally terminate upon distribution of the assets. Distribution of the assets, however, could not occur until the government and the Indians reached agreement as to certain services and benefits. Nonetheless, the land was sold and the assets were distributed, thereby terminating the trust, without reaching agreement as to the disputed services and benefits. After the services and benefits were terminated, the Indians sued the government for breach of trust, alleging that the trust relationship had been unlawfully terminated, causing, inter alia, loss of the services and benefits to the Indians. Because the suit was filed after the statute of limitations had run, however, the Indians argued that the statute should be tolled because of the organizational difficulties suffered by the Indians due to the unlawful termination by the government. Moreover, the Indians argued, they could not have been aware of the events that fixed liability until the Band (the Indian government) had formally reorganized and the "Band itself was able to know of its injury and act to protect its interests." Id. at 1579. Thus, effectively, the Indians argued that the government "concealed from the Band the subsequent acts which resulted in injury to the Band, thereby preventing their discovery until the Band was able

to reorganize." Id. We noted that it is true that "the statute of limitations can be tolled where the government fraudulently or deliberately conceals material facts relevant to a plaintiff's claim so that the plaintiff was unaware of their existence and could not have discovered the basis of his claim." Id. at 1577. In holding that the statute was not tolled, however, we reasoned that "[t]he Band's theory . . . ignores the reality that it is through the knowledge of individual persons . . . that such entities gain the actual knowledge of the events which give rise to their potential causes of action. The termination of the Board's charter or the withdrawal of federal recognition did not affect the ability of the individual members to obtain knowledge and those individual members knew or should have known at least by 1967 all the facts which indicated that the sale . . . was improper under the Act." Id. at 1580.[6]

Similarly, beyond question, the government's November 24, 1987 Notice informed DuMarce of the facts giving rise to her potential cause of action. As in Menominee, the government did not conceal the facts giving rise to DuMarce's cause of action, such that the facts were all available to DuMarce. The statute cannot be tolled due to her ignorance of her legal right to pursue a takings cause of action. Likewise, as

---

[6] One Federal Circuit case cited by DuMarce, Shoshone Indian Tribe of the Wind River Reservation v. United States, 364 F.3d 1339 (Fed. Cir. 2004), did hold that the applicable statute of limitations did not bar the beneficiary plaintiffs' cause of action. This court reasoned that the plaintiffs could not know the facts that suggested they might have a cause of action because the government trustee had not performed an accounting. Id. at 1346. This case, however, is consistent with the Federal Circuit standard discussed above. Indeed, the Shoshone panel explained that "the statute of limitations 'shall not commence to run' on any claim until an accounting is provided from which the Tribe can discern whether any losses occurred which would give rise to a cause of action against the trustee." Id. (emphasis added). Thus, the Shoshone panel, too, placed the onus for discovering the cause of action on the trust beneficiary, once fully informed of the facts.

in Brown, DuMarce knew of the facts, namely, escheat pursuant to Public Law No. 98-513. Moreover, DuMarce's possible belief that she was powerless to sue because of the escheat is not relevant. Finally, as in Hopland, DuMarce had actual knowledge of the events which gave rise to her takings cause of action. Thus, the government satisfied its fiduciary duty under the Federal Circuit standard.

Moreover, we must contemplate the potential repercussions if we were to agree with DuMarce. DuMarce is essentially asking the government, as trustee, to act as her personal lawyer. To require the government trustee to act as lawyer to all Indians would require the government to research every possible law for any possible Indian plaintiff, interpret those laws for each Indian, and advise each Indian of every possible cause of action. In this case, for example, the government would have been required to inform DuMarce not only of a possible takings action, but other possible causes of action, such as breach of fiduciary duty or breach of trust. This seems beyond the reasonable scope of the government's duty as trustee, as interpreted in binding precedent, and also unreasonable and impractical.

The dissent asserts that the government had a "duty to inform Colleen Renville DuMarce of an essential fact giving rise to a potential cause of action against the government, viz., the U.S. Supreme Court's decision in Hodel v. Irving, 481 U.S. 703 (1987)." The Irving case does not give rise to the takings claim; enactment of the 1984 statute did. The dissent would require the government to help an Indian appreciate the likelihood of success of a possible cause of action, which is the work of counsel — which a trustee is not. DuMarce was notified of the statute and that it took her property interest from her. These two facts, without more, fixed liability. That is all the

beneficiary must know.  Cf. Hopland, 855 F.2d at 1577 ("[A] claim 'first accrues' when all the events have occurred which fix the alleged liability. . . .").  As the district court noted, moreover, DuMarce herself "argu[ed] that, because section 207 had been amended prior to the Irving decision, there was sufficient uncertainty surrounding the applicability of Irving. . . .  That doubt, [DuMarce] contends, was not dissipated until Youpee was decided in 1997."  DuMarce, 277 F. Supp. 2d at 1055 (referring to Babbitt v. Youpee, 519 U.S. 234 (1997)).

Furthermore, that the statutes in Irving and DuMarce may be similar does not sufficiently inform the government that the 1984 statute will also be found to constitute a taking.  Apparently the government was uncertain of the constitutionality of even slight changes in section 207 because, even though section 207 was found to be a taking in Irving in 1987, it was not until ten years later in 1997 that the slightly-amended version of section 207 was found to be a taking in Youpee.  The government itself was not certain of the constitutionality — to the point that it defended the constitutionality of a slightly-amended version of section 207 ten years later.  In addition, regardless of how similar the statutes themselves may be, the facts of each case may be distinguishable.  Such a determination requires legal judgment.  To assert that, based solely on facial similarity of the statutes, the government should have known that Public Law No. 98-513 would be deemed unconstitutional may oversimplify the process of making legal judgments by analogizing and distinguishing based on facts.

05-1104                                          12

Moreover, even assuming arguendo[7] that the Irving decision can for any purpose be characterized as a "fact," it is of a different nature than the facts of which the government trustee must inform the Indian beneficiaries under our case law. Specifically, interpreting a court decision requires legal judgment. For example, requiring the trustee to inform the beneficiaries of this Supreme Court decision may require the trustee to inform them of other decisions by various courts. Deciding which cases are similar enough requires legal judgment. Requiring a trustee to inform a beneficiary of a "fact" that requires legal judgment is requiring the trustee to act as a lawyer, a requirement beyond the scope of our case law and beyond the scope of obligations of a trustee.

Additionally, the dissent would extend the type of "fact" of which the trustee must inform the beneficiary far beyond our case law. In Menominee, the fact was the harvest volume in their own forest. In Brown, the facts were the underreporting of gross receipts and underpayment of the Indians' rental fees. The fact in Hopland was the sale of their own land. In none of these cases did we require the trustee to inform the beneficiaries of a later legal event. In none did we require a legal judgment as to whether a "fact" was relevant, as would be the case if the trustee had to determine which decisions were relevant and thus whether a particular decision had to be disclosed to the Indians. Rather, the facts at issue were all historical facts. Finally, in all of these cases, the facts directly affected them — not different parties altogether.

---

[7] It is doubtful that "the U.S. Supreme Court's decision in Hodel v. Irving" is a "fact" within the meaning of our case law. A judicial decision is ordinarily not considered a liability-creating fact. It is an adjudication based on the application of law to fact. As a court judgment, rather than a fact, the government would not be required to inform DuMarce of Irving.

These cases did not require the trustee to research case law or other information not directly related to the beneficiaries in question. According to the reasoning of the dissent, a trustee would have to inform a beneficiary of <u>any</u> useful type of information, even though not related to the potential plaintiffs. This is unduly burdensome and requires the trustee to act as counsel by rendering legal advice.

The dissent would expand the fiduciary duty of the government to inform beneficiaries not only of the "facts" giving rise to their causes of action, but of "the <u>circumstances</u> surrounding those facts." Our case law does not support such an expansive duty. Nor does the dissent point to any such authority. Requiring a trustee to inform beneficiaries of circumstances surrounding facts creates an indeterminate obligation. While <u>Hopland</u> requires the trustee only to inform the beneficiary of facts that fix liability, the dissent would create an undefined requirement of also informing beneficiaries of circumstances that surround those facts. Determining which "circumstances" must be reported to the beneficiaries requires legal judgment also, especially if judicial decisions are deemed "circumstances." It requires the trustee to make the legal judgment of similarity of cases based not only on the holdings of cases and the statutes at issue in each case, but on the facts of each case.

Finally, the dissent asserts: "it represents a clear conflict of interest between the government's role as trustee for DuMarce and its role in enforcing an unconstitutional statute against her. That conflict should have heightened the government's duty to inform its beneficiary." There is, however, no conflict of interest between two governmental roles if the government is enforcing a constitutional statute vis-à-vis DuMarce. If the government is enforcing a statute that it believes to be constitutional,

then there is no conflict of interest, and hence no "heightened" duty to inform DuMarce of anything.

The district court relied on <u>Loudner v. United States</u>, 108 F.3d 896 (8th Cir. 1997), early in its discussion of the government's fiduciary duty to Indian beneficiaries, referring to a nebulous "somewhat lessened" duty of the beneficiary "to discover claims against the trustee." <u>DuMarce</u>, 277 F. Supp. 2d at 1055 (quoting <u>Loudner</u>, 108 F.3d at 901). Yet in holding that the government breached its fiduciary duty to Indians so as to toll the statute of limitations, the trial court simply reasoned, "It does seem odd that the government, as trustee, would advance an argument requiring the trust beneficiary, a non-lawyer, to actively investigate whether she has claims against the trustee. . . . [T]he court finds, as a matter of law, that the government breached a fiduciary duty owed to her by failing to inform her of her potential cause of action against the United States," <u>id.</u> at 1055, making a leap of logic from the vague <u>Loudner</u> <u>dicta</u> it cited earlier.

In <u>Loudner</u>, the government had established a judgment fund to satisfy financial liabilities owed to members of the Sisseton-Wahpeton Sioux Tribe. Plaintiffs did not know of the existence of the fund. When they learned of the fund, after the statute of limitations period, they filed suit to recover their share of the fund. The Court of Appeals for the Eighth Circuit held that the government, as trustee of the fund, breached its duty to plaintiffs because it had not informed them of the existence of the fund. "Because plaintiffs had no reason to know of the existence of the judgment fund and, consequently, of their possible claim to it, they have a strong argument that the statute of limitations did not begin to run on their claim until they received actual notice of the fund's <u>existence</u>. . . ." <u>Loudner</u>, 108 F.3d at 901 (emphasis added).

The district court in this instant case misinterpreted <u>Loudner</u> to require the government to inform its beneficiary Indians of their potential cause of action against the government. <u>DuMarce</u>, 277 F. Supp. 2d at 1055. We reject this interpretation of <u>Loudner</u>. <u>Loudner</u> did not find breach of duty based on failure to inform the plaintiffs of their cause of action, but based solely on failure to inform the plaintiffs of the existence of the fund. The Eighth Circuit did state, "The statute of limitations begins to run when a trust beneficiary knows or should know of the beneficiary's claim against the trustee. Nonetheless, because the beneficiary is entitled to rely upon the good faith and expertise of the trustee, the beneficiary's duty to discover claims against the trustee is somewhat lessened." 108 F.3d at 901 (citing <u>Manchester Band of Pomo Indians v. United States</u>, 363 F. Supp. 1238 (N.D. Cal. 1973)). This is <u>dicta</u>. Moreover, even a "somewhat lessened" duty to discover claims on the part of the Indian beneficiaries does not justify requiring the government to inform every beneficiary of possible causes of action. In any event, at most <u>Loudner</u> is persuasive authority which we may and do disregard.

B.

While the trial court based its decision on a view of the fiduciary duty that we reject, DuMarce raises other issues, two in particular. On appeal, DuMarce asserts for the first time that the statute of limitations of 28 U.S.C. § 2401(a) does not apply to her cause of action. DuMarce reasons that her suit is not against the United States or a takings claim, but rather is solely against the Secretary of the Interior for non-monetary relief because among the forms of relief she requests is the reopening of her father's estate. Because section 2401(a) only applies to suits against the United States, she

argues, its limitations period does not apply. We decline to address this argument because DuMarce did not raise this argument before the trial court, according to the record. As the trial court noted in its opinion: "The government argues that the six-year statute of limitations contained in the Little Tucker Act controls. See 28 U.S.C. § 2401. The plaintiffs offer no alternative." DuMarce, 277 F. Supp. 2d at 1054. In any event, on its face, her lawsuit was against the United States and was plainly a takings case.

C.

The final issue is whether the equitable tolling applies to DuMarce's takings claim.[8] DuMarce asserts that, in addition to tolling based on breach of fiduciary duty, the statute of limitations should be tolled in her case based on equitable principles. She simply states that, although "the principles of equitable tolling do not extend to what is at best a 'garden variety claim of excusable neglect,'" hers is not such a case because she brought her claim three years after the Secretary of the Interior in 1999 ordered the reopening of certain escheated Indian estates based on the holding of Youpee, that the escheat provision of the Indian Land Consolidation Act of 1983 was an unconstitutional taking without just compensation.[9]

The government responds that the Department of the Interior did not engage in any misconduct, let alone the trickery or misleading conduct needed for equitable

---

[8]    On appeal, DuMarce argues for the first time that equitable estoppel also precludes a time bar on her claim. Because the record reflects that she did not raise the equitable estoppel argument below, we decline to address it.

[9]    DuMarce alleged that Public Law 98-513 was "similarly unconstitutional" to section 207 of the Indian Land Conservation Act of 1983, which was found to be a taking without just compensation in violation of the Fifth Amendment in Irving. The amended version of section 207 was found to be a taking without just compensation in Youpee.

tolling, because it notified DuMarce of all the facts relevant to her claim. We agree with the government.

"[E]quitable tolling against the federal government is a narrow doctrine" that requires "a compelling justification for the delay." Martinez v. United States, 333 F.3d 1295, 1318 (Fed. Cir. 2003) (en banc). Indeed, "[f]ederal courts have typically extended equitable relief only sparingly." Frazer v. United States, 288 F.3d 1347, 1353 (Fed. Cir. 2002) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). For equitable tolling to apply, the defendant must be "induced or tricked" by government misconduct. Id. (quoting Irwin, 498 U.S. at 96). DuMarce makes a single allegation of misconduct by the government, namely, that "the Secretary, at least constructively, knew Section 5 of P.L. 98-513 was similarly unconstitutional." Yet DuMarce fails to cite a single case that supports her contention that this single act – of sending notice of the escheat and of the law governing the escheat – reaches the "sparing[ ]" level of "trick[ery]" or misconduct required for equitable tolling.

It is true that the amended escheat provision of the Indian Land Consolidation Act of 1983 which was held to constitute a taking without just compensation is similar to section 5 of Public Law No. 98-513.[10] Yet this fails to establish that in 1987 the Secretary "knew" that section 5 of Public Law No. 98-513 was unconstitutional. The similarity of the two escheat provisions fails to establish that the Secretary of the Interior

---

[10] Section 207 of the Indian Land Consolidation Act of 1983 provides: "No undivided fractional interest in any tract of trust or restricted land within a tribe's reservation or otherwise subjected to a tribe's jurisdiction shall descedent [sic] by testacy or devise but shall escheat to that tribe if such interest represents 2 per centum or less of the total acreage in such tract and has earned to its owner less than $100 in the preceding year before it is due to escheat." Pub. L. No. 97-459 (1983).

engaged in "trick[ery]" or misconduct by sending DuMarce the November 24, 1987 Notice.

III.

We disagree with the trial court that the law imposes on the government in its role as a trustee to Indians a duty to notify an Indian of possible lawsuits, as opposed to the facts possibly giving rise to such causes of action. Because the government, as a fiduciary to DuMarce, fulfilled its duty to inform her of the facts giving rise to a potential lawsuit by sending her the November 24, 1987 Notice, the six-year statute of limitations of 28 U.S.C. § 2401(a) which governs DuMarce's claim was not tolled by the alleged breach of fiduciary duty by the government. Nor does equity defeat this otherwise applicable statute of limitations. Thus, her filing of her takings claim fourteen years after her cause of action accrued on November 24, 1987, precludes district court jurisdiction under the 28 U.S.C. § 2401(a) six-year statute of limitations. Therefore the district court's grant of summary judgment to plaintiffs and direct dismissal of DuMarce's claim of a taking without just compensation is

REVERSED.

# United States Court of Appeals for the Federal Circuit

05-1104

HARVEY DUMARCE, KENNETH ERVIN DUMARCE,
COLLEEN RENVILLE DUMARCE, PAMELA RENVILLE,
and DENNIS L. DUMARCE, SR.,

Plaintiffs-Appellees,

v.

P. LYNN SCARLETT, Acting Secretary of the Interior,
DEPARTMENT OF THE INTERIOR,
and UNITED STATES,

Defendants-Appellants.

LOURIE, Circuit Judge, dissenting.

I respectfully dissent from the majority's reversal of the district court's decision because I believe that the government, as trustee of the land involved here, had a duty to inform Colleen Renville DuMarce of an essential fact giving rise to a potential cause of action against the government, viz., the Supreme Court's decision in Hodel v. Irving, 481 U.S. 703 (1987).

The district court correctly held that the fiduciary relationship that the government assumed with respect to DuMarce entitled the court to toll the statute of limitations, thereby permitting DuMarce to recover for the unconstitutional taking of the land that she was apparently entitled to under the terms of her father's will. The majority opinion articulates as the "Federal Circuit rule" that the government, as trustee, is required to inform Indian beneficiaries, such as DuMarce, only "of the facts giving rise to potential causes of action." The opinion then proceeds to conclude that the government, through

a Notice dated November 24, 1987, provided DuMarce with sufficient "facts giving rise to her potential cause of action." I disagree with that conclusion.

The November 24, 1987 Notice, a document drafted like a judicial opinion, replete with legal jargon, informed DuMarce, a non-lawyer, that:

> Part of the decedent's land interests on the Sisseton Reservation are subject to Pub. L. 98-513, 9 Stat. 2411, entitled "An Act Pertaining to the Inheritance of Trust or Restricted Land on the Lake Traverse Indian Reservation in North and South Dakota" enacted October 19, 1984. That the Act provides, among other things, that the decedent's heirs or devisees must be enrolled members to be eligible to a life estate and the title to the land escheats (passes) to the Tribe. In addition, if the decedent's interest in a parcel of land amounts to less than 2½ acres, then such interest escheats to the Tribe (unless the land is located with a municipality) even though the decedent's heirs are enrolled members of the tribe. Any property of a person dying before April 17, 1985 with a valid Will is not affected by this law.

The Notice then informed DuMarce that she owned less than a 2½ acre property interest, and thus that her property would escheat to the United States in trust for the tribe. What the Notice did not inform DuMarce of, however, is that a similar law was struck down over six months earlier by the United States Supreme Court in Irving. The existence of that Supreme Court decision is arguably a fact that a trustee should have told its beneficiary. Even if it is not truly a "fact," a trustee, having a fiduciary relationship to its beneficiary, should have been expected to inform its beneficiary concerning it.

As stated by the district court, the Supreme Court in Irving considered a takings claim "nearly identical to [the one] advanced in this case," and declared the statute at issue in that case, § 207 of the Indian Land Consolidation Act of 1983, to be

unconstitutional.[1]  DuMarce, 277 F. Supp. 2d at 1053.  Relying on the holdings of Irving and a subsequent Supreme Court case striking down an amended version of § 207, Babbitt v. Youpee, 519 U.S. 234 (1997), the district court had "little trouble in concluding that section 5 [of the Sisseton-Wahpeton Sioux Act of 1984] violates the Fifth Amendment."  Id.  Given that the only meaningful difference between § 207, which was considered in Irving, and § 5, applicable to this case, is the criterion for determining when an inherited property interest is too small to be devised, I agree with the district court that the claims in these two cases are "nearly identical."  Given the identity of the claims of the two cases, the holding of Irving could have assisted DuMarce in realizing that she may have had a potential cause of action against the government within the statute of limitations period.  Moreover, DuMarce may have found it useful to know that the Supreme Court criticized a similar statute as "extraordinary" in that it "amounts to a virtual abrogation of the right to pass on a certain type of property—the small undivided interest—to one's heirs."  Irving, 481 U.S. at 716.  Unfortunately, the government, as trustee, never informed DuMarce of the existence of the Irving ruling.

I do not believe that requiring the government to have informed DuMarce of the Supreme Court's decision in Irving during the relevant time period is tantamount to requiring the government to act as DuMarce's personal attorney, a legitimate policy concern of the majority.  Informing a beneficiary of facts, as well as the circumstances surrounding those facts, such as the Irving decision, is not the same as acting as the

---

[1]  Under § 207, "[N]o undivided factional interest in any tract of trust or restricted land within a tribe's reservation or otherwise subjected to a tribe's jurisdiction shall descedent [sic] by intestacy or devise but shall escheat to that tribe if such interest represents 2 per centum or less of the total acreage in such tract and has earned to its owner less than $100 in the preceding year before it is due to escheat."

beneficiary's attorney. The nullification of § 207 was information that the government knew would have potentially allowed DuMarce to recognize her cause of action before the statute of limitations had run. The government, as trustee, had the duty of informing its beneficiary that the Supreme Court had struck down a law very similar to that which the "trustee" was currently enforcing against the "beneficiary" against the beneficiary's interest. Aside from being essentially within the majority's "Federal Circuit rule" requiring disclosure of facts, it represents a clear conflict of interest between the government's role as trustee for DuMarce and its role in enforcing an unconstitutional statute against her. That conflict should have heightened the government's duty to inform its beneficiary.

I therefore dissent from the majority's contrary decision and would affirm the district court's decision.